ROBERT L. WATKINS et al., Respondents, v STEPHEN R. FROMM et al., Appellants, et al., Defendants.

Second Department, May 6, 1985

### APPEARANCES OF COUNSEL

*Martin, Clearwater & Bell* (*Kevin M. Solan* of counsel), for appellants.

*McCoy & Agoglia, P.C.* (*Kathleen M. Beckett* and *Emmet J. Agoglia* of counsel), for respondents.

### OPINION OF THE COURT

NIEHOFF, J.

This appeal presents the novel question of whether a patient of a medical group, who allegedly has suffered injury by reason

of the malpractice of doctors associated with the group, is entitled to the benefit of the "continuous treatment" doctrine as against the doctors alleged to have committed the acts of malpractice where the patient continues to receive treatment for the same illness, injury or condition from other members of the group following the departure from the group of the alleged wrongdoing doctors.

Defendants Fromm and Sarno, the physicians who left the group, moved for summary judgment at Special Term. The basis for their motion was the alleged termination in 1974 of the relationship of each of the movants with the other individual defendants who were former partners of defendant Fromm and former employers of defendant Sarno. It is their contention that upon their termination of their relationship with the group, the Statute of Limitations began to run for any acts of malpractice committed by them, as a consequence of which this action, which was commenced in February of 1980, is time barred. Special Term denied the motion, holding that there is a question of fact to be resolved as to whether a sufficient nexus exists between the moving defendants and the physicians in the group practice who continued to treat plaintiff Robert Watkins after the departure of Drs. Fromm and Sarno. We affirm, but for the reasons stated hereinafter.

We hold that the continuous treatment doctrine is applicable to toll the Statute of Limitations for a malpractice action against physicians alleged to have committed malpractice who have terminated their relationship with a group medical practice if it be established that the plaintiff was considered to be a patient of the group and was treated by the group, as such, and remained under the care of physicians in the group for the same injury, illness or condition after the departure from that practice of the physicians who were primarily, if not solely, responsible for the alleged wrongful acts and omissions. Stated somewhat differently, we conclude that the subsequent treatment by the remaining members of the medical group may be imputed to the departed physicians for Statute of Limitations purposes, provided it is established that the patient was treated as a group patient and the subsequent treatment was for the original condition and/or complications resulting from the original condition. Inasmuch as a question of fact exists at least as to whether the subsequent treatment in this case was for the original condition or complications arising therefrom, the moving defendants are not entitled to summary judgment based on their Statute of Limitations defense. Similarly the presence of such

question of fact precludes us from granting summary judgment in favor of the plaintiffs dismissing the defense.

### THE FACTS

This medical malpractice action was commenced by the service of a summons and verified complaint on defendant Stephen R. Fromm on February 27, 1980, on defendant James B. Sarno on February 14, 1980, and on all of the other named codefendants on February 11, 1980. Issue was joined by the service of an answer on behalf of the defendants, I. Melbourne Greenberg, Donald I. Mauser, Stephen D. Burstein and their professional corporation on March 10, 1980 and by the defendants-appellants Fromm and Sarno on March 21, 1980.

The record before us reveals that in January 1973, plaintiff Robert L. Watkins had his first contact with the defendants. At that time he was examined by the defendant Dr. Donald I. Mauser, to whom he had been referred after experiencing constant pain, numbness and tingling in his leg. In 1973, the defendant doctors were practicing in a medical group organized as a partnership, whose members were Dr. Mauser, a neurologist, and Drs. I. Melbourne Greenberg, Stephen D. Burstein, and Stephen R. Fromm, all board certified in the specialty of neurosurgery. Dr. James B. Sarno, also a neurosurgeon, was a salaried employee of the partnership.

Upon his initial examination, Dr. Mauser tentatively concluded that Mr. Watkins' symptoms resulted from either a mass lesion or tumor in the left cerebral hemisphere or cervical spondylosis and he recommended that the patient be hospitalized for further neurological tests. Plaintiff was admitted to South Nassau Communities Hospital on February 4, 1973. During that admission he underwent various diagnostic tests and was examined by other doctors in the defendants' medical group, including Drs. Fromm and Sarno. Statements made by Doctors Greenberg, Fromm and Sarno during the course of their pretrial depositions indicate that Mr. Watkins was considered to be a patient of the entire medical group, rather than of any one of the individual doctors and that it was the practice of the defendant doctors to discuss, as a group, the diagnosis and treatment of all of the patients under their care. The defendants-appellants, Drs. Fromm and Sarno, further admitted that they had participated in discussions concerning the diagnosis and treatment of Mr. Watkins with other defendants in the medical group, including Dr. Mauser, prior to examining him in the hospital in February 1973.

Based on the neurological work-up done at the hospital and the observations of the defendants, Mr. Watkins was tentatively diagnosed as suffering from a tumor of the left parasigittal region of his brain. On February 14, 1973, Dr. Fromm, assisted by Dr. Sarno, performed a left parietal craniotomy on Mr. Watkins to determine if he was, indeed, suffering from a brain tumor. However, no tumor or vascular abnormality was uncovered and the craniotomy was terminated without any tissue being removed or dissected. Mr. Watkins remained in the hospital under observation and underwent various tests until he was discharged on March 4, 1973. Thereafter, Mr. Watkins complained of complications from the surgery. It appears that the surgery was followed by an infection at the site of the wound, which resulted in his being readmitted to the hospital on two different occasions during the spring of 1973. During the second readmission, on June 12, 1973, Dr. Sarno, assisted by Dr. Fromm, performed surgery on Mr. Watkins to remove an infected bone flap from the site of the original parietal craniotomy. The plaintiff remained in the hospital until he was discharged on June 26, 1973.

The record shows further that Dr. Fromm never personally treated Mr. Watkins after his discharge from the hospital on June 26, 1973 and that Dr. Sarno last participated in the treatment of Mr. Watkins on January 25, 1974.

On August 17, 1974, Dr. Fromm withdrew from the partnership and he has ceased to be associated with the codefendants in any manner since that date. On December 31, 1974, Dr. Sarno left his salaried position with the partnership and he, too, has not been associated with any of the other defendants since that date. However that may be, Mr. Watkins continued to receive treatment as an out-patient from the remaining members of the medical group and the professional corporation they subsequently formed, from the time of his hospital discharge until approximately July 1978.

Plaintiffs' complaint and bill of particulars disclose that their claims of medical malpractice are essentially premised upon (1) the misdiagnosis of a brain tumor by the defendants and the resulting parietal craniotomy, which it is alleged was not only unnecessary but also negligently performed by Drs. Fromm and Sarno and (2) the failure of defendants to obtain his informed consent for the craniotomy performed by Drs. Fromm and Sarno. Mr. Watkins claims that he has sustained permanent injuries due to the malpractice of the defendants.

## THE CONTENTIONS

As noted above, the defendants-appellants argued before Special Term, and assert on appeal, that this action is untimely as against them because the last dates on which they participated in the treatment of Mr. Watkins, and the last dates on which they were associated with the medical group, were more than three years before February 1980, the date when they were served with plaintiffs' summons and complaint in this action (*see,* CPLR 214 former [6]).

The plaintiffs, on the other hand, contend that inasmuch as the treatment Mr. Watkins received from the medical group through July 1978, was for the same condition from which he was suffering when he first consulted members of the group in January 1973, this action was instituted in a timely fashion because it was started within three years from the date he left the care of the group.

## THE LAW

Before taking up a discussion of the applicability of the continuous treatment doctrine to the facts of this case, we note that because defendants' alleged wrongful acts and omissions occurred prior to July 1, 1975, the effective date of the two and one-half year Statute of Limitations for medical malpractice actions (CPLR 214-a, as added by L 1975, ch 109, § 6), the three-year Statute of Limitations contained in CPLR 214 former (6) is applicable to the case at bar (*see, McDermott v Torre,* 56 NY2d 399, 407; *Barrella v Richmond Mem. Hosp.,* 88 AD2d 379, 380).

Plaintiffs' action was commenced in February 1980. As a result, even utilizing the three-year period of limitations this action would be time barred as against the defendants-appellants, unless the period of limitations is tolled until the conclusion, in July 1978, of Mr. Watkins' treatment by the remaining members of the group medical practice.

The general rule in medical actions is that the cause of action accrues on the date the alleged act of malpractice occurs, even though it may not be discovered until after the Statute of Limitations has run (*Davis v City of New York,* 38 NY2d 257, 259).

In 1962 the Court of Appeals, in *Borgia v City of New York* (12 NY2d 151), formulated the "continuous treatment" exception to the foregoing rule. Briefly stated, said exception provides that when the course of treatment which includes the wrongful acts or omissions runs continuously and is related to the original condition or complaint, the accrual comes only at the end of the

treatment. In adopting that exception for the State of New York, the Court of Appeals, in an opinion by then Chief Judge Desmond, wrote (12 NY2d 151, 156, *supra*): "Little argument is needed to prove the proposition that the 'continuous treatment' theory is the fairer one. It would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital superintendent".

In *Barrella v Richmond Mem. Hosp.* (88 AD2d 379, 383, *supra*), Justice Lazer of this court discussed the reasoning behind the doctrine in these words:

"The rationale for the continuous treatment exception rests on a number of doctrinal assumptions. Thus it is posited that the trust and confidence that marks the physician-patient relationship puts the patient at a disadvantage to question the doctor's techniques (*Johnson v Winthrop Labs. Div. of Sterling Drug*, 291 Minn 145, 150; *Gillette v Tucker*, 67 Ohio St 106; *Farley v Goode*, 219 Va 969, 980; see, also, *Siegel v Kranis*, 29 AD2d 477, 480), and gives the patient the right to rely upon the doctor's professional skill without the necessity of interrupting a continuing course of treatment by instituting suit (*Greene v Greene*, 56 NY2d 86, *supra; Borgia v City of New York*, *supra*, p 156; *Fonda v Paulsen*, 46 AD2d 540, 544, *supra;* 31 Fordham L Rev 842, 845). The exception not only provides the patient with the opportunity to seek corrective treatment from the doctor, but also gives the physician a reasonable chance to identify and correct errors made at an earlier stage of treatment (*McDermott v Torre*, 56 NY2d 399, *supra; Williams v Elias*, 140 Neb 656; *Farley v Goode, supra*).

"An even more obvious rationale for the continuous treatment exception is that it salvages causes of action which otherwise would be time barred because of the latent nature of the injury (*Waldman v Rohrbaugh*, 241 Md 137; 63 Harv L Rev 1177, 1201) and it provides flexibility when there is difficulty in determining the precise moment when the injury causing act or omission took place (*Nervick v Fine*, 195 Misc 464, affd 275 App Div 1043; *Williams v Elias, supra; Schmitt v Esser*, 178 Minn 82)".

In essence, the continuous treatment doctrine acts as a toll on the Statute of Limitations, thus staying the time in which to bring a medical malpractice action "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" (*Borgia v City of New York*, 12 NY2d 151, 155; *McDermott v Torre, supra*, at p 405).

Various cases decided since *Borgia* (*supra*) have held that in a medical malpractice action where the injured plaintiff has been treated for the same condition following the acts or omissions constituting the alleged malpractice, the continuous treatment doctrine is not available to the plaintiff unless there is evidence of a relationship between the allegedly wrongdoing physician and either the subsequent treating physician or the patient during the period of the subsequent treatment (*see, McDermott v Torre, supra; Swartz v Karlan,* 107 AD2d 801; *La Bay v White Plains Hosp.,* 97 AD2d 432; *Florio v Cook,* 65 AD2d 548; *Ruane v Niagara Falls Mem. Med. Center,* 60 NY2d 908; *Coyne v Bersani,* 94 AD2d 961, *affd* 61 NY2d 939).

It would seem that the thought behind such rule is that once a patient has severed his relationship with a doctor, there is no real impediment to his bringing suit against the doctor and no sound reason to give him the benefit of a toll of the Statute of Limitations. However, while the patient maintains a relationship with that doctor, either directly or through a subsequent treating physician, and the patient continues to be treated for the same condition, he ought not to be foreclosed by the Statute of Limitations because, as we have shown, fairness and reason dictate that the patient not be required to interrupt a continuing course of treatment to institute a malpractice action.

As indicated earlier, Drs. Fromm and Sarno seek dismissal of the complaint insofar as it is asserted against them upon the ground that the treatment rendered by members of the medical group after Drs. Fromm and Sarno severed their relationship with the group may not, under any circumstances, be imputed to them for purposes of the continuous treatment exception to the general rule of claim accrual under the Statute of Limitations. They claim that from that point on they had no relationship with either the patient or the remaining group physicians. On the other hand, Mr. Watkins, while conceding that he, himself, had no ties with the appealing doctors after they left the medical group, contends that this case should not be governed by the relationship rule enunciated above because he received a continuous course of treatment from an identifiable medical group in which the appellants were participants during a portion of that treatment, and that he relied on the group throughout the entire course of this treatment. He asserts that such being the case the Statute of Limitations should be tolled as to appellants until the date of last treatment. We agree. But, before any determination on the applicability of the doctrine can be made, at the very least the precise nature of the care and treatment rendered by the codefendants from 1975 to 1978 must be explored. Indeed, in

their brief, the defendants-appellants note that the plaintiffs "made no specific allegations concerning the care which Mr. Watkins received * * * during the period 1975 through 1978".

The claim of Drs. Fromm and Sarno to the effect that the continuous treatment exception is not applicable to them is based upon the language and holdings of the cases cited above. However, such cases did not address the unique fact situation presented on this appeal. In all of those cases the plaintiff was the patient of a particular doctor or hospital and the patient did not receive continuous treatment from that doctor or hospital. The continued treatment received by the patient came from someone other than the original physician or hospital after the patient had ended his relationship with such doctor or hospital.

Here, it would appear from statements made by some of the defendants during their pretrial depositions that Mr. Watkins was not considered to be the patient of Drs. Fromm and Sarno. Rather, he was considered to be a patient of the entire group and all of the named defendants were involved in discussions concerning his condition and diagnosis. Unlike the cases heretofore decided, Mr. Watkins was not the patient of any particular doctor but a patient of the medical group. The testimony contained in the record before us suggests that the alleged misdiagnosis of Mr. Watkins' condition (i.e., that he was suffering from a brain tumor when he was not) which led to the surgery performed by Drs. Fromm and Sarno, was arrived at jointly by all of the defendants in the group practice, some of whom concededly continued to treat Mr. Watkins until July 1978. Furthermore, it would appear that Mr. Watkins placed his trust and confidence in the medical group, as such, when he underwent brain surgery in 1973. Therefore, it was to be expected that he would continue to rely on the group for postsurgical treatment and he ought not to be penalized for not bringing suit against Drs. Fromm and Sarno, whom he identified as part of the group, while the group continued to treat him. Surely it was theoretically possible for Mr. Watkins to have sued Drs. Fromm and Sarno after they left the medical group. But, was that really a realistic option? For all that appears in the record, Mr. Watkins may not even have known that Drs. Fromm and Sarno had left the medical group after having performed the surgery on him. Because of the manner in which the doctors conducted their practice, the patient was considered by the doctors to be the patient of the group and he so viewed himself. Hence, he may not even have questioned the fact that other members of the group took up his care. Although our decision does not turn on the point, we note that it is settled law that "the relation of physician and patient, once

initiated, continues until it is ended by the act of the patient, or the withdrawal by the physician with notice, or until the condition of the patient is such as no longer to require medical treatment" (45 NY Jur [rev vol], Physicians and Surgeons, § 118). That being so, it cannot fairly be argued that Mr. Watkins terminated his relationship with his physician (the group), prior to 1978.

Assuming, arguendo, that Mr. Watkins was apprised of the departure of Drs. Fromm and Sarno from the group, there were still considerable impediments to the institution of a lawsuit against those two doctors which were exacerbated by the fact that Mr. Watkins was a patient of the group, and Drs. Fromm and Sarno ought not to be entitled to take advantage of those obstacles so as to avoid a trial on the merits. The record does not disclose that Mr. Watkins knew that Drs. Fromm and Sarno had committed acts or omissions which might give him a cause of action for malpractice and it is hardly likely that the members of the group who continued to treat him would advise him that he had grounds to consider bringing a lawsuit against Drs. Fromm and Sarno for malpractice particularly since the remaining members of the group would be liable to Mr. Watkins for any such malpractice in their capacity as partners of Dr. Fromm and employers of Dr. Sarno.

Furthermore, under the circumstances of this case, Mr. Watkins would have found it necessary to sever his relationship with the remaining doctors in the medical group, even if he chose to bring an action against only Drs. Fromm and Sarno, because of the probable involvement of all of the defendants in the alleged misdiagnosis and the decision to proceed with the surgery as well as their legal responsibility for the acts of Drs. Fromm and Sarno. The continuity of treatment by the remaining members of the group, who were familiar with his condition, afforded the group an opportunity to utilize their firsthand knowledge of Mr. Watkins' condition and medical history to correct or ameliorate any errors made at an earlier stage of treatment (*see, McDermott v Torre,* 56 NY2d 399, *supra; Borgia v City of New York,* 12 NY2d 151, *supra; Barrella v Richmond Mem. Hosp.,* 88 AD2d 379, *supra*). Thus, our holding in this case fosters the policy of promoting the continuity of the physician-patient relationship, which is inherent in the decided cases.

It should be emphasized that we are not holding that Drs. Fromm and Sarno are vicariously *liable* for the acts of the remaining doctors committed after Drs. Fromm and Sarno terminated their relationship with the group. Since Dr. Fromm was

a partner in the group practice his liability will be determined as of the time he was a member of the group, in accordance with substantive principles of law applicable to medical doctors who practice as partners. Since Dr. Sarno was only an employee of the medical group, his liability will be determined as of the time he was an employee of the group, in accordance with substantive principles of law applicable to employee doctors. Our holding that the action against Drs. Fromm and Sarno may not be time barred does not, in any manner, alter the law pertaining to their liability to the plaintiffs or as among the doctors who practiced medicine as a part of the group. What is more, the fact that the remaining doctors formed a professional corporation sometime after the departure of Drs. Fromm and Sarno is irrelevant to the issue before us, i.e., whether the continuous treatment rendered by the remaining doctors of the group can be imputed to the doctors who departed in order to toll the Statute of Limitations as against them.

We are aware of the fact that in *Ruane v Niagara Falls Mem. Med. Center* (60 NY2d 908, 909, *supra*), the Court of Appeals wrote: "We find no legal basis for concluding, as plaintiff urges, that although the relationship between the doctor and the hospital may not be sufficient to impute the doctor's continuous treatment to the hospital for the purpose of assessing liability, it may nevertheless serve as a basis for extending the Statute of Limitations."

But, those words were spoken against the background of a case in which the facts bear no resemblance whatever to those of the instant case.

In the *Ruane* case (*supra*), the plaintiff, in an action instituted in 1981, sought to hold the defendant hospital liable for supplying allegedly nonsterile burr hole covers which were implanted into plaintiff's skull during a surgical procedure completed in 1975. The plaintiff had experienced pain and sought medical consultation from her physician during the period which elapsed between her discharge from the defendant hospital and the inception of her lawsuit. The plaintiff's contention was that the alleged continuous treatment by her personal physician should be attributed to the hospital. The Court of Appeals held that the fact that the doctor also happened to be affiliated with the hospital, but not employed by the hospital, was not alone sufficient to impute the doctor's conduct following the implantation of the devices to the hospital. With those as the facts, the court wrote the words quoted above.

We do not read the *Ruane* case (*supra*) as laying down a per se rule that unless it appears that a doctor is legally responsible for

the continuous treatment itself, the continuous treatment may not serve as a basis for extending the Statute of Limitations as to that doctor.

In *Borgia* (*supra*), then Chief Judge Desmond spoke of the "continuous treatment" theory as "the fairer one". In a case such as this one, a fair application of the theory requires that we hold that Drs. Fromm and Sarno are not to be permitted to escape a trial on the merits of plaintiffs' claim that they committed malpractice, simply because they left the group more than three years before it concluded its treatment of Mr. Watkins and simply because Drs. Fromm and Sarno may not be legally liable for any malpractice which may have occurred during the period of the continuous treatment.

The doctors who banded together to form a group practice selected the manner in which they would practice medicine. Mr. Watkins did not make that decision and was not privy to their internal arrangement. He became a patient of the group, rather than of any particular doctor, and had every right to believe that the group, as such, was, in effect, his physician, and that he could continue to be treated by that physician until either he or that physician ended the physician-patient relationship. The doctors who were a part of the group, as partners or employees, had what amounted to a joint interest in Mr. Watkins with respect to the medical treatment for which he came to the group in 1973. Drs. Fromm and Sarno should not be heard to argue that Mr. Watkins should have sued them within three years of the date on which they severed their relationship with the group, when they were a part of the group, either as partner or employee, which led him to believe that he was the group's patient, not only at the time of surgery but thereafter as well. Mr. Watkins relied on the group, as the doctors intended he should do, and he had the right to do so, and fairness dictates that he not suffer the loss of a trial on the merits against the allegedly offending doctors when he was justified in his reliance.

Undoubtedly, some will argue that our holding will allow a patient to bring a malpractice action against a doctor who has departed from a medical group years after he has left the group and that such a holding will visit hardships on the former member of the group. Our answer to that argument is found in the words of then Chief Judge Desmond in *Borgia* (12 NY2d 151, 157, *supra*): "We are warned of dire results from this holding. Patients, we are told, will use this decision to justify suits brought years later. But this assumes that, so long as a patient continues to consult the same physician for any kind of illness,

the time to sue as to any kind of malpractice will never start to run. We are creating no such situation. The 'continuous treatment' we mean is treatment for the same or related illnesses or injuries, continuing after the alleged acts of malpractice, not mere continuity of a general physician-patient relationship".

So, here, the departed doctors' potential liability will continue only as long as the patient continues to be treated by the group for the same condition. It is no more unreasonable to apply the continuous treatment doctrine to this case than it was to apply it in the *Borgia* case (*supra*).

Of course, for reasons stated above, a final determination concerning the applicability of the continuous treatment doctrine to toll the Statute of Limitations until Mr. Watkins terminated his relationship with defendants' medical group, must await a trial at which the trier of the facts will have to weigh the evidence as it pertains to the nature of the treatment he received from the remaining defendants, subsequent to the departure of Drs. Fromm and Sarno.

In sum, Special Term correctly determined that a question of fact existed as to the application of the continuous treatment doctrine to toll the Statute of Limitations until Mr. Watkins terminated his treatment with the defendants remaining in that practice, so as to preclude a grant of summary judgment dismissing the complaint as against the defendants Drs. Fromm and Sarno (*see, e.g., McDermott v Torre,* 56 NY2d 399, 406, *supra; Fonda v Paulsen,* 46 AD2d 540, 543; *cf. Friedlander v Ariel,* 94 AD2d 628, 629).

Accordingly, the order of Special Term should be affirmed.

BROWN, J. (concurring in part and dissenting in part). I am satisfied that regardless of the extent, if any, to which those doctors who continued as partners actually participated in the initial treatment and diagnosis of the injured plaintiff, they were legally responsible for such treatment and diagnosis as members of the partnership under the auspices of which the alleged acts of medical malpractice were carried out. Thus, for purposes of the doctrine of continuous treatment, the legal relationship which existed as between the defendants-appellants, who are alleged to have committed the acts of malpractice, and the remaining defendants, who continued as members of the partnership and later formed a professional corporation, was sufficient to impute any continued treatment by the latter to the former (*McDermott v Torre,* 56 NY2d 399, 403; *cf. Ruane v Niagara Falls Mem. Med. Center,* 60 NY2d 908). I depart, however, from the conclusion reached by Justice Niehoff, in

which Justice Gibbons has concurred, in that my review of the record discloses no dispute either as to whether the treatment rendered to the injured plaintiff was for the same condition as that for which he was originally treated or that it was, in fact, continuous. Accordingly, I would go further and, upon denying the defendants-appellants' motion for summary judgment in their favor, would search the record (CPLR 3212 [b]) and grant partial summary judgment in favor of the plaintiffs against the defendants-appellants dismissing their defense of the Statute of Limitations on the ground that the period of limitation was tolled by virtue of the doctrine of continuous treatment.

The doctrine of continuous treatment provides for a tolling of the period of limitation in a medical malpractice action "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" (*Borgia v City of New York,* 12 NY2d 151, 155). The doctrine ordinarily applies where there has been continuous treatment by the same physician. In our case, however, the initial treatment and the alleged acts of malpractice were carried out by at least one member and one employee of a medical partnership — the defendant-appellant doctors — while the continuous treatment was provided by those doctors who remained as members of the group practice of which the injured plaintiff was a patient. In order to apply the doctrine of continuous treatment, it is necessary to find that there was a sufficient connection between the defendants-appellants and the remaining defendant doctors such that the continued treatment by the latter group may be imputed to the former. Because of their legal relationship as partners at the time of the malpractice, there was a sufficient connection between the doctors who continued to treat plaintiff and Dr. Fromm, who is alleged to have committed the original malpractice, to support the application of the continuous treatment doctrine as to him. Similarly, I conclude that Dr. Sarno's status as an employee of the partnership at the time of the alleged malpractice provides a sufficient connection between him and the surviving doctors to support the application of the continuous treatment doctrine.

The liability of members of a partnership for a tort committed in the course of its business is joint and several (Partnership Law §§ 24, 26; *Caplan v Caplan,* 268 NY 445; *see also, Connell v Hayden,* 83 AD2d 30, 46). The individual partners themselves are treated as any other person who jointly commits a tort either in person or by an agent. Thus, in accordance with agency principles, each of the members of the partnership is liable for the torts committed by one of the partners acting in the scope of

the partnership business regardless of whether they participated in, ratified, or had knowledge of the tortious acts. Similarly, all of the partners are liable for tortious acts of an employee of the partnership committed in the course of its business (*see generally,* 16 NY Jur 2d, Business Relationships, § 1411).

The alleged acts of malpractice in this case occurred at a time when all of the individual defendants — with the exception of Dr. Sarno, who was an employee — were members of the partnership. Thus, liability for the alleged malpractice, whether committed by one of the partners or by an employee, extended to all the members of the partnership. It is by virtue of this legal relationship between the defendants and the defendants-appellants at the time of the alleged malpractice that the doctrine of continuous treatment is applicable (*McDermott v Torre, supra*).

Further, I find the existence of no issue of fact on this record concerning whether the condition for which the injured plaintiff received treatment was the same as the one for which he originally sought the services of the medical group, or that the treatment he received was continuous. The record is clear — and the defendants-appellants' brief does not dispute — that the treatment rendered to the injured plaintiff through July 1978 by the remaining defendants, a group of neurological specialists, was for the same neurological condition for which he had originally sought treatment from the group in 1973, and for the complications resulting from the alleged acts of malpractice. Thus, for the period through July 1978 the injured plaintiff remained under the continuous care of a group of physicians who, although perhaps not actual participants in the alleged acts of malpractice, were each potentially liable for those acts as members of the previously dissolved partnership.

The doctrine of continuous treatment is intended to permit the preservation of the physician-patient relationship and to allow a patient to continue in the care of his physician without interrupting that care to commence a medical malpractice suit. The rationale for the rule was expressed by the Court of Appeals in *Borgia v City of New York* (12 NY2d 151, 156, *supra*) as follows: "[i]t would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital superintendent." Since the injured plaintiff in this case concededly remained under the continuous care of a group of physicians, each of whom were potentially individually liable for the alleged acts of malpractice, if there were no toll of the period of limitation, he would have been required to have

commenced his action while still receiving corrective treatment from those potentially liable. To require him to pursue such a course would run counter to the fundamental purpose of the continuous treatment doctrine.

Accordingly, I vote to affirm the order appealed from insofar as it denied the motion of the defendants-appellants for summary judgment dismissing the plaintiffs' complaint as to them, but I would *sua sponte* modify the order by adding a provision searching the record and thereupon granting partial summary judgment to the plaintiffs dismissing the defense of the Statute of Limitations asserted by the defendants-appellants.

TITONE, J. P. (dissenting). In the absence of a legal nexus, the treatment tendered by the other members of the professional corporation cannot be imputed to Fromm and Sarno. Notwithstanding the analyses set forth in the opinions of Justices Niehoff and Brown on a complex and novel issue, I am not persuaded that there can be a transmutation of individual liability to corporate liability and then back to individual liability which would enable the circumvention of the Statute of Limitations. Accordingly, I dissent and vote to reverse the order, grant the motion for summary judgment, and dismiss the complaint insofar as it is asserted against defendants Fromm and Sarno.

It is basic in medical malpractice actions that a plaintiff's cause of action accrues on the date of the act or omission alleged to constitute the malpractice or the termination of specific treatment (*Davis v City of New York,* 38 NY2d 257, 258; *Paciello v Patel,* 83 AD2d 73, 75; *Weinblatt v Lydia Hall Hosp.,* 105 AD2d 781). Dr. Fromm, who had been a member of a medical partnership comprised of himself and other defendants, last treated plaintiff on June 26, 1973, and disassociated himself from the partnership on August 17, 1974. Similarly, Dr. Sarno last treated plaintiff on January 25, 1974. He was an employee of the partnership and left that employment on December 31, 1974. Thus, unless there is a toll or extension applicable, the causes of action interposed against them in 1980 are barred by the applicable three-year Statute of Limitations (*Weinblatt v Lydia Hall Hosp., supra; Florio v Cook,* 65 AD2d 548, *affd* 48 NY2d 792).[*]

In opposition to the motion for summary judgment made by defendants Fromm and Sarno plaintiffs submitted only an affirmation of counsel, which, liberally read, urges that treatment thereafter received through a professional corporation, formed

---

[*] Fromm was served with process on February 27, 1980; Sarno was served with process on February 14, 1980.

by the other defendants in 1975, should be imputed to Fromm and Sarno and the statute tolled under the continuous treatment rule (*see, e.g., McDermott v Torre,* 56 NY2d 399; *Borgia v City of New York,* 12 NY2d 151); *Swartz v Karlan,* 107 AD2d 801). Assuming, without deciding, that such an affirmation is sufficient to defeat a motion for summary judgment (*but cf. Winegrad v New York Univ. Med. Center,* 64 NY2d 851; *Frimmerman v Bernstein,* 107 AD2d 795), I perceive no basis for extending the continuous treatment rule to the facts of this case.

In *McDermott v Torre* (56 NY2d 399, 408, *supra*), the Court of Appeals explained that the "policy underlying the continuous treatment doctrine seeks to maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure (see *Borgia v City of New York, supra*). Implicit in the policy is the recognition that the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so".

These considerations are obviously not applicable here because defendants Fromm and Sarno could not discover any error in treatment after they ceased treating the injured plaintiff and severed all connections with the subsequent treating physicians. In fact, plaintiffs made no claim, either in their pleadings or in the papers submitted to Special Term, that the subsequent treating physicians relied upon any treatment or diagnosis rendered by Fromm and Sarno during 1973 and 1974.

True, partners are vicariously liable for the torts of their copartners committed within the scope of partnership business (Partnership Law §§ 24, 26; *Bennett v Watson,* 21 App Div 409, 412). But treatment rendered after August 17, 1974 — more than five years before defendant Fromm was served with a summons and complaint — cannot be attributed to defendant Fromm since vicarious liability terminates with the dissolution of the partnership (*see, Halperin v Edwards & Hanly,* 430 F Supp 121, 125; *Guild v Herrick,* 51 NYS2d 326). Nor could Fromm be personally or vicariously liable for any subsequent treatment rendered by the subsequently formed professional corporation for the simple reason that he never was a member of that entity.

A "partnership is not a separate entity which may be held liable for negligence on the theory that it permitted [a patient] to be treated by unskilled or incompetent agents or employees" (*Golia v Health Ins. Plan,* 6 AD2d 884, 885, *affd* 7 NY2d 931).

Consequently, assuming defendant Sarno, as an employee, jointly diagnosed and treated the injured plaintiff with the named codefendant partners, that would defer the date of accrual of the claim against him to December 31, 1974, the date he ceased employment. Obviously, he, too, cannot be held personally, vicariously, or jointly liable for any treatment rendered by the professional corporation because he, like defendant Fromm, had no relationship with it (*cf. Paciello v Patel,* 83 AD2d 73, 77; *Connell v Hayden,* 83 AD2d 30).

In short, there is no recognizable jural relationship between the professional corporation and defendants Fromm and Sarno. Consequently, the plaintiffs cannot validly claim that the continuous treatment by different physicians and a different entity defers the date of claim accrual against Fromm and Sarno (*Ruane v Niagara Falls Mem. Med. Center,* 60 NY2d 908; *Swartz v Karlan,* 107 AD2d 801, *supra; Golia v Health Ins. Plan,* 6 AD2d 884, *affd* 7 NY2d 931, *supra*).

The order appealed from should be reversed, the appellants' motion for summary judgment should be granted and the causes of action asserted against them should be dismissed.

GIBBONS, J., concurs with NIEHOFF, J.; BROWN, J. (concurring in part and dissenting in part), votes to modify the order appealed from by adding thereto a provision searching the record upon the motion of defendants Fromm and Sarno for summary judgment and thereupon granting summary judgment dismissing the defense of the Statute of Limitations asserted by said defendants, and to affirm the order as so modified, with an opinion; TITONE, J. P. (dissenting), votes to grant the motion of defendants Fromm and Sarno for summary judgment dismissing the complaint as against them, with an opinion.

Order of the Supreme Court, Nassau County, dated January 6, 1983, affirmed, with costs.