[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff-executrix Roberta White brought this action for medical malpractice and breach of contract against defendant Bridgeport Radiology Associates, P.C. ("Bridgeport Radiology"), and Radiologist defendants Edward Bradley, Alan Kaye and A. H. Weinstein, all of whom are employees or agents of Bridgeport Radiology, to recover damages arising from the death of her husband, Harvey White ("Mr. White"). The plaintiff's original nine-count complaint was filed on May 10, 1989.
The following allegations are taken from the plaintiff's second amended complaint, which was filed on November 13, 1990. "On March 13, 1985, Mr. White was referred to Bridgeport Radiology by his treating physician, Dr. Van de Berghe. On that date, defendant Bradley conducted a radiographic examination of Mr. White's chest and lungs. The plaintiff alleges that Bradley had CT Page 8930 agreed to review the x-rays and advise Dr. Van de Berghe with respect to the need for follow-up care. After reviewing, Mr. White's x-rays, Bradley filed a written report which provides in pertinent part:
 No significant pulmonary or pleural abnormality is found. . . . The intrathoracic structures and bony thorax are unremarkable. . . .
IMPRESSION: Negative chest.
The plaintiff alleges that the x-rays taken on this date revealed the presence of a lesion on Mr. White's right lung which required further evaluation, and that Bradley failed to advise Dr. Van de Berghe of the existence of the lesion and of the need for further evaluation of Mr. White's condition.
In May 1986, Mr. White returned to Dr. Van de Berghe and was again referred to defendants. On May 2, 1986, x-rays were taken and reviewed by defendant Kaye, who noticed the presence of an "ovoid" and concluded that there was "[p]robably no active disease; additional views suggested." On May 7, 1986 additional x-rays were taken by defendant Weinstein. The plaintiff alleges that Weinstein while noticing the lesion in Mr. White's chest failed to advise Mr. White's doctor of the possibility that the lesion was cancerous, and of the need for prompt testing and follow-up treatment.
On April 17, 1987, Mr. White was examined by Dr. Arthur DeGraffe, Jr., who allegedly advised him that x-rays taken in April 1987 revealed a lesion on his right lung, and that the lesion was present in x-rays that were taken by the defendants in 1985 and 1986. The lesion was subsequently diagnosed as cancerous, and in May 1987, Mr. White underwent surgery to remove the lesion.
The plaintiff and Mr. White commenced the present action against the defendants on May 4, 1989. Mr. White died from the cancer on August 5, 1989.
On December 27, 1991, Bradley filed a motion for summary judgment on the first, second and third counts of the plaintiff's second amended complaint, on the ground that these claims are barred by the statute of limitations contained in General Statutes52-584. (In the first count of her second amended complaint, the CT Page 8931 plaintiff asserts a negligence claim against Bradley and Bridgeport Radiology. The second and third counts respectively contain breach of contract and loss of consortium claims against both Bradley and Bridgeport Radiology. The fourth through ninth counts involve the other defendants and are not the subject of this motion.) Bradley submits an affidavit and the deposition testimony of Mr. White's treating physician, Dr. Van de Berghe, in support of his motion. On April 19, 1993, the plaintiff filed a memorandum in opposition along with excerpts from the depositions of Bradley, Kaye, and Dr. Van de Berghe, and copies of the defendants' medical records (which contain their reviews of Mr. White's 1985 and 1986 radiographic examinations.)
Practice Book 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Lees v. Middlesex Insurance Co., 219 Conn. 644, 650,594 A.2d 952 (1991). "[T]he party seeking summary judgment has the burden of showing the nonexistence of any material fact." D.H.R. Construction Co. v. Donnelly, 180 Conn. 430,429 A.2d 908 (1980). A material fact is one that will make a difference in the case. Yanow v. Teal Industries, Inc., 178 Conn. 262, 268-69,422 A.2d 311 (1979). Because the burden of proof is on the moving party, the facts presented must be viewed in the light most favorable to the party opposing the motion. Mingachos v. C.B.S. Ins., 196 Conn. 91, 111, 491 A.2d 368 (1985). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact, a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772,781, 595 A.2d 334 (1991). If the party opposing the motion does not respond, by affidavit or as otherwise provided by Practice Book 380, "the court is entitled to rely upon the facts stated in the affidavit of the movant." Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 11-12, 459 A.2d 115 (1983).
A. In support of his motion for summary judgment on the plaintiff's first count, which sounds in medical malpractice, and on the third count, in which the plaintiff asserts a loss of consortium claim based on defendant Bradley's alleged negligence, Bradley argues that the first and third counts are time-barred by General Statutes 52-584, which provides in pertinent part that CT Page 8932 "[n]o action to recover damages. . . caused by. . . malpractice of a physician . . . may be brought more than three years from the date of the act or omission complained of. . . ." Bradley argues that the act or omission complained of allegedly occurred on March 13, 1985, when he reviewed Mr. White's x-rays, and that the plaintiff did not commence the action against him until May 4, 1989, more than three years after the act or omission allegedly occurred. Bradley also contends in his affidavit that he had no professional contact or involvement with Mr. White subsequent to March 14, 1985. Thus, Bradley contends that his contact with Mr. White was essentially a discrete diagnostic event that was not part of a continuing course of treatment.
In response, the plaintiff argues that the three year statute of limitations is tolled by the doctrine of "constructive participation" and "continuous treatment," because Bradley's evaluation of Mr. White's chest x-rays were subsequently relied upon by other radiologists at Bridgeport Radiology (defendants Kaye and Weinstein), and therefore, the subsequent alleged negligent evaluations of Mr. White's x-rays can be imputed back to Bradley. Thus, the plaintiff contends that the statute of limitations should be tolled for any cause of action that arises from Bradley's alleged negligent evaluation of Mr. White's March 1985 chest x-rays.
 I.
The doctrine of constructive participation was first state Fonda v. Paulsen, 46 App.Div.2d 540, 363 N.Y.S.2d 841 (3d. Dept, 1975) in which the court held that:
 The nature of a pathologist's work is such that he rarely . . . has a direct physician-patient relationship with an individual — in other words, he never treats patients in the conventional sense — but his work is often the basis upon which the nature of subsequent treatments to be given by the attending physician is determined. . . . [W]here the pathologist should have reasonably expected that his work would be relied on by other practitioners in determining the mode of treatment, we feel it appropriate to impute to that pathologist or diagnostician constructive participation in that treatment so long as it continued. . . . [T]here may have come a point where continuation of a course of treatment was negligent in and of itself irrespective of the original diagnosis. . . . But the determination of such a question is one of fact. . . . CT Page 8933
Id. 363 N.Y.S.2d at 846.
The rule of Fonda v. Paulsen was subsequently limited in McDermott v. Torre, 56 N.Y.2d 399, 452 N.Y.S.2d 351,437 N.E.2d 1108 (1982), in which the Court of Appeals held that:
 These considerations do not apply to an independent [diagnostic] laboratory. In this context, the inquiry necessarily must be directed to the nature of the laboratory's relationship to the patient. . . . Generally, a laboratory neither has a continuing or other relevant relationship with the patient nor, as an independent contractor, does it act as an agent for the doctor or otherwise act in relevant association with the physician . . . .
Emphasis added.) Id., 56 N.Y.2d at 408; Accord., Meath v. Mishrick, 68 N.Y.2d 992, 510 N.Y.S.2d 560, 503 N.E.2d 115
(1986) (absent an agency or other relevant relationship between pathologist and treating physician, or of a continuing relationship between pathologist and patient, continuous treatment of patient by treating physician did not extend the statute of limitations against a pathologist who allegedly misread patient's biopsy); Damshere v. Beraer, 123 App.Div.2d 343, 506 N.Y.S.2d 354 (2d Dept. 1986) (reliance by treating physician on radiologist's test results is insufficient, by itself, to prolong the statute of limitations against the radiologist.)
The doctrine of constructive participation has not been recognized by any court in Connecticut. This doctrine was rejected in Starkweather v. Manchester Memorial Hospital Corp.,8 CSCR 464 (May 10, 1993, Hammer, J.) (relying on McDermott v. Torre, supra, and Meath v. Mishrick, supra, ) and Copeland v. Radiology Associates, 8 CSCR 196 (February 22, 1993, Higgins, J.) If assuming Connecticut recognized the doctrine of constructive participation as it currently exists under New York law, it would not apply to the present case. The doctrine is inapplicable in the present case because the plaintiff is not seeking to extend the statute of limitations against Bradley based on the treating physician's continuous treatment of Mr. White, and because the plaintiff is not arguing that an agency relationship exists between Mr. White's treating physician and Bradley.
II. Doctrine of Continuous Treatment
In Connell v. Colwell, 214 Conn. 242, 571 A.2d 116 (1990), CT Page 8934 the
Connecticut Supreme Court held that:
 The term malpractice itself may be applied to a single act of a physician or surgeon [or] . . . to a course of treatment. . . . When . . . the injurious consequences arise from a course of treatment, the statute does not begin to run until the treatment is terminated. . . . The policy underlying the continuous treatment doctrine seeks to maintain the physician/patient relationship in the belief that the most efficacious medical cure will be obtained when the attending physician remains from onset to cure. . . .
(Citations omitted) Id., 253.
 To invoke the doctrine. . . the continuous treatment" relied on must be treatment by defendant physician . . . for the same or related condition, and for a particular physical injury or illness
54 C.J.S., Limitations of Actions 174, p. 227.
The plaintiff argues that Mr. White had established a continuous course of treatment with Bridgeport Radiology, as Mr. White was examined by Bradley in 1985, and by other members of the group in 1986. The plaintiff contends that the radiologists who performed the 1986 diagnoses relied on Bradley's 1985 diagnosis. (Bradley allegedly retired from Bridgeport Radiology prior to the commencement of the present action.) In support of her argument, the plaintiff cites Watkins v. Fromm, 108 App.Div.2d 233,488 N.Y.S.2d 768 (2d Dept. 1985), in which the court held that the continuous treatment doctrine was applicable to toll the statute of limitations against physicians that allegedly committed malpractice, and who treated their relationship with the defendant group medical practice. In order for the doctrine to apply, it must be established that the plaintiff was a patient of the group, was treated by the group, and remained under the care of physicians in the group for the same injury or illness after the departure from that group of the physicians who were primarily responsible for the alleged malpractice. Id. 488 N.Y.S.2d at 769.
"Where an attending or treating physician asked a pathologist to diagnose a tumor removed from the patient's body, the pathologist's relationship to the patient `terminated when he examined the tumor and made his report.'" Starkweather v. Manchester CT Page 8935 Memorial Hospital Corp., supra, 465, citing Walters v. Rinker,520 N.E.2d 468, 473 (Ind.App. 1988). Where radiologists maintain no contact with a patient aside from the performance of a diagnosis, and the diagnosis is imparted directly to the treating physician, the performance of each diagnosis is complete and discrete, and does not constitute continuous treatment, despite the fact that on successive occasions, the radiologists compared prior diagnoses with the most recent ones. Noack v. Symenow,132 App.Div.2d 965, 518 N.Y.S.2d 495, 496 (4th Dept. 1987).
In support of his motion for summary judgment, Bradley submits an affidavit in which he states that:
 5. . . . Dr. Van de Berghe's referral of March 13, 1985 for the chest x-ray contained no information about Mr. White's symptoms, health, habits, or lifestyle which would cause me to consider radiologic investigations other than the chest x-ray performed on March 13, 1985.
 7. . . . [M]y interpretation of the chest x-ray. . . was sent or hand-delivered to Dr. Richard Van de Berghe.
 9. . . . I had no professional contact or involvement with Harvey White subsequent to March 14, 1985.
In response, the plaintiff submits a copy of a report prepared by defendant Kaye on May 2, 1986, which states that Kaye compared the 1986 diagnosis with the report filed by Bradley on March 13, 1985. "A response to a question propounded in a deposition is not a judicial admission." General Statutes 52a-200. "At trial, in open court, the testimony of [the deponent] may contradict her earlier statement and a question for the jury to decide may emerge." Esposito v. Wethered, 4 Conn. App. 641, 645,496 A.2d 222 (1985).
Bradley's affidavit establishes that Mr. White was referred to Bridgeport Radiology in 1985 for a chest x-ray, and that the referral by Mr. White's treating physician did not contain any information regarding Mr. White's "symptoms, health, habits, or lifestyle." In opposing Bradley's motion the plaintiff presents no evidence with respect to whether Mr. White was under going treatment for a specific illness or condition in 1985, nor does the plaintiff present evidence that Mr. White was treated for the same illness (or a related illness) when he returned to Bridgeport Radiology in 1986. Bradley's relationship with Mr. White terminated CT Page 8936 in March 1985, despite the fact that in 1986, other members of Bridgeport Radiology compared their diagnoses with Bradley's 1985 diagnosis. See Starkweather v. Manchester Memorial Hospital Corp., supra, and Noack v. Symenow, supra. Routine chest x-rays taken in March 1985, and relied upon during a subsequent radiographic exam performed in May 1986, did not amount to continuous treatment for purposes of extending the statute of limitations against the radiologist who performed the original diagnosis. Accordingly, Bradley's motion for summary judgment is granted as to the first and third counts of the plaintiff's second amended complaint.
B. In support of his motion for summary judgment, Bradley argues that the plaintiff's second count, in which the plaintiff attempts to assert a breach of contract claim, actually sounds in malpractice and should be subject to the three-year statute of limitations contained in 52-584. Thus Bradley argues that the plaintiff's second count is time barred. In response, the plaintiff argues that the second count sounds in breach of contract and was timely commenced within the six-year period provided by General Statutes 52-576.
"Whether the plaintiff's cause of action is one for malpractice depends upon the definition of that word and the allegations of the complaint." Barnes v. Schlein, 192 Conn. 732, 735,473 A.2d 1221 (1984). Malpractice is defined as "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury . . . to the recipient of those services. . . ." (Citations omitted.) Id. To be separate from a malpractice claim, the plaintiff must allege that the defendant doctor assured or warranted a specific result, as opposed to a situation where the doctor makes a generalized statement that the result will be good. Labieniec v. Nichols, 4 CSCR 383, 384 (June 5, 1989, Aronson, J.) See also Bria v. St. Joseph's Hospital,153 Conn. 626, 631-32, 220 A.2d 29 (1966). "A contract implied in fact, like an express contract, depends on actual agreement. . . ." Therrien v. Safeguard Mfg. Co., 180 Conn. 91, 94, 429 A.2d 808
(1980). If the gravamen of the complaint is that the defendant doctor failed to exercise the requisite standard of care, then the complaint sounds in tort and will be subject to the three year limitations period provided in General Statutes 52-584. Barnes v. Schlein, supra, 734-35. CT Page 8937
In the second count of the amended complaint, the plaintiff alleges that Bradley agreed to provide certain diagnostic services to Mr. White, and Bradley breached the parties' agreement by failing to provide such services. The plaintiff's second count does not contain any allegations that Bradley failed to exercise the requisite standard of care. Thus, the second count sounds in contract and therefore, was timely commenced within the six year limitations period provided by 52-576. Accordingly Bradley's motion for summary judgment is denied with respect to the second count.
McKeever, J.