# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1194.1**

**CA 12-02185**

PRESENT: SMITH, J.P., CENTRA, FAHEY, AND WHALEN, JJ.

---

DENNIS GREEN AND THERESA GREEN,
PLAINTIFFS-RESPONDENTS,

V                                   MEMORANDUM AND ORDER

ASSOCIATED MEDICAL PROFESSIONALS OF NY, PLLC,
ET AL., DEFENDANTS,
AND TIMOTHY E. KENDRICK, RPAC, DEFENDANT-APPELLANT.
(APPEAL NO. 1.)

---

MARTIN, GANOTIS, BROWN, MOULD & CURRIE, P.C., DEWITT (DANIEL P. LARABY OF COUNSEL), FOR DEFENDANT-APPELLANT.

DEFRANCISCO & FALGIATANO LAW FIRM, SYRACUSE (JEAN MARIE WESTLAKE OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS.

--------------------------------------------------------------------------------------------

Appeal from an order of the Supreme Court, Onondaga County (Deborah H. Karalunas, J.), entered March 13, 2012.  The order denied the motion of defendant Timothy E. Kendrick, RPAC, to dismiss the complaint against him.

It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

Memorandum:  Plaintiffs commenced these medical malpractice actions seeking damages arising from the alleged failure of defendants to diagnose and treat the prostate cancer of Dennis Green (plaintiff) in a timely manner.  In appeal No. 1, defendant Timothy E. Kendrick, RPAC (Timothy) contends that Supreme Court erred in denying his motion to dismiss the complaint against him as time-barred pursuant to CPLR 3211 (a) (5).  In appeal No. 2, defendants contend that the court erred in denying what the order on appeal characterizes as "[d]efendant's motion" to dismiss the complaints against them pursuant to CPLR 3211 (a) (3) based on plaintiffs' lack of capacity to sue.  We affirm the order in appeal No. 1, and we reverse the order in appeal No. 2.

With respect to appeal No. 1, we note that "[a]n action for medical . . . malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure" (CPLR 214-a).  Here, Timothy met his initial burden on the motion by demonstrating that he last treated plaintiff on September 27, 2007,

and that plaintiffs commenced their action against him over two years and six months later, on May 18, 2011 (*see Massie v Crawford*, 78 NY2d 516, 519, *rearg denied* 79 NY2d 978; *Nailor v Oberoi*, 237 AD2d 898, 898; *see generally Larkin v Rochester Hous. Auth.*, 81 AD3d 1354, 1355; *Perrino v Maguire*, 60 AD3d 1475, 1476).  "The burden therefore shifted to plaintiff[s] to establish the applicability of the continuous treatment doctrine, which tolls the Statute of Limitations until the end of the course of treatment" (*Nailor*, 237 AD2d at 898, citing *Massie*, 78 NY2d at 519).

We conclude that plaintiffs met that burden.  "[U]nder the 'continuous treatment doctrine,' a Statute of Limitations or a notice of claim period does not begin to run until 'the course of treatment which includes the wrongful acts or omissions has run *continuously* and is *related* to the same original condition or complaint' " (*Young v New York City Health & Hosps. Corp.*, 91 NY2d 291, 296, quoting *Borgia v City of New York*, 12 NY2d 151, 155; *see Hilts v FF Thompson Health Sys., Inc.* [appeal No. 2], 78 AD3d 1689, 1691).  "The toll of the continuous treatment doctrine was created to enforce the view that a patient should not be required to interrupt corrective medical treatment by a physician and undermine the continuing trust in the physician-patient relationship in order to ensure the timeliness of a medical malpractice action" (*Young*, 91 NY2d at 296; *see Rizk v Cohen*, 73 NY2d 98, 104).  It thus follows that " '[t]he continuous treatment doctrine may be applied to a physician who has left a medical group, by imputing to him or her the continued treatment provided by subsequently-treating physicians in that group' " (*Mule v Peloro*, 60 AD3d 649, 650; *see Watkins v Fromm*, 108 AD2d 233, 233-235; *see generally Cole v Syracuse Community Health Ctr.*, 209 AD2d 1005, 1005).  Here, plaintiffs raised an issue of fact concerning the applicability of the continuous treatment doctrine by submitting evidence that plaintiff was a group patient of defendant Syracuse Urology Associates, P.C. (SUA) and defendant AMP Urology (AMP), that plaintiff underwent a continuous course of treatment that began in 2004, and that such treatment remained ongoing within two years and six months of the commencement of the action (*see Ozimek v Staten Is. Physicians Practice, P.C.*, 101 AD3d 833, 834-835; *Cole*, 209 AD2d at 1005; *Watkins*, 108 AD2d at 239-242).

With respect to appeal No. 2, we address at the outset two procedural issues concerning the motions to dismiss the complaints for lack of capacity to sue.

First, we note that, although SUA was a moving defendant in appeal No. 2, was named in the affidavit of service of the notice of appeal as a defendant represented by counsel, and seeks relief in defendants' joint appellate brief in appeal No. 2, it was not named as an appellant in the notice of appeal.  Pursuant to CPLR 2001, we disregard the error in the text of the notice of appeal and treat the appeal as also taken by SUA (*see Matter of Tagliaferri v Weiler*, 1 NY3d 605, 606).

Second, we note that AMP was not named as a movant in defendants'

respective motion papers in appeal No. 2, but the court characterized AMP as a movant in the order in appeal No. 2.  Plaintiffs do not contend on appeal that the court erred in doing so, and we likewise deem AMP to have been a movant (*see* CPLR 2001).

We agree with defendants in appeal No. 2 that the complaints should have been dismissed because plaintiffs lack capacity to sue. Here, plaintiffs filed for chapter 7 bankruptcy protection on April 22, 2009 without listing a potential medical malpractice claim as an asset, and they obtained a bankruptcy discharge on August 3, 2009. "The failure of . . . plaintiff[s] to disclose a cause of action as an asset in a prior bankruptcy proceeding, the existence of which the plaintiff[s] knew or should have known existed at the time, deprive[s] the plaintiff[s] of the legal capacity to sue subsequently on that cause of action" (*Whelan v Longo*, 23 AD3d 459, 460, *affd* 7 NY3d 821; *see R. Della Realty Corp. v Block 6222 Constr. Corp.*, 65 AD3d 1323, 1323; *Technology Outsource Solutions, LLC v ENI Tech., Inc.*, 21 AD3d 1280, 1281-1282; *see generally Dynamics Corp. of Am. v Marine Midland Bank-N.Y.*, 69 NY2d 191, 196-197; *Dischiavi v Calli* [appeal No. 2], 68 AD3d 1691, 1692-1693).  Inasmuch as plaintiffs acknowledge that they did not list the instant malpractice claims on their 2009 bankruptcy petition, we must determine when plaintiffs' claims accrued, whether plaintiffs knew or should have known of those claims at the time of that bankruptcy filing, and what effect, if any, the bankruptcy proceeding has on plaintiffs' capacity to sue.  We note that the bankruptcy proceeding was reopened by the United States Bankruptcy Court for the Northern District of New York during the pendency of this appeal.

With respect to the issue of accrual, we note that "[a]n action in medical malpractice 'accrues' at the date of the original negligent act or omission, [and] subsequent continuous treatment does not change or extend the accrual date but serves only to toll the running of the applicable Statute of Limitations" (*Matter of Daniel J. v New York City Health & Hosps. Corp.*, 77 NY2d 630, 634; *see Young v New York City Health & Hosps. Corp.*, 91 NY2d 291, 295).  Here, in this medical malpractice case based on the alleged failure of defendants to render a proper diagnosis for plaintiff, the accrual date could be no later than approximately April 2008, when plaintiff's cancer returned. Inasmuch as plaintiffs filed for bankruptcy protection in April 2009, we conclude that plaintiffs' claims accrued prior to the bankruptcy filing.

With respect to the issue whether plaintiffs should have known of their instant claims at the time of the bankruptcy filing, we note that "plaintiff[s'] knowledge of the *facts* giving rise to the claim[s], rather than [their] knowledge of [their] *legal right*[s], is decisive" (*Cafferty v Thompson*, 223 AD2d 99, 101, *lv denied* 88 NY2d 815 [emphasis added]; *see Hansen v Madani*, 263 AD2d 881, 883). "Neither ignorance of the law nor inadvertent mistake excuses a plaintiff's failure to list such a claim as a potential asset in the bankruptcy petition" (*Hutchinson v Chana Weller, DDS, PLLC*, 93 AD3d 509, 510).  Here, although they might not have known that defendants' alleged failure to render a proper diagnosis was actionable, on the

record before us we conclude that plaintiffs knew of the circumstances of plaintiff's treatment with defendants and plaintiff's cancer, i.e., the *facts* giving rise to the malpractice claims, prior to the bankruptcy filing.

Finally, with respect to the issue of the reopening of the bankruptcy proceeding, we note that, "[i]n light of the defect based on a lack of capacity to sue, . . . the trustee must commence a new action in a representative capacity on behalf of [plaintiffs'] bankruptcy estate and, in doing so, [the trustee] will receive the benefit of the [six]-month extension embodied in CPLR 205" (*Pinto v Ancona*, 262 AD2d 472, 473; *see Reynolds v Blue Cross of Northeastern N.Y.*, 210 AD2d 619, 620). We further note that, although we are granting defendants' motions, the complaints are dismissed without prejudice to commence a new action asserting these claims pursuant to CPLR 205 (a) (*cf. Chiacchia & Fleming v Guerra*, 309 AD2d 1213, 1213-1214, *lv denied* 2 NY3d 704).

Entered:   November 15, 2013                Frances E. Cafarell
                                            Clerk of the Court