Sharon Jo Ann HARRISON Appellant,

v.

George R. VALENTINI, M.D. Appellee.

No. 2004–SC–000015–DG.

Supreme Court of Kentucky.

Dec. 22, 2005.

As Modified on Denial of Rehearing
March 23, 2006.

Freeda M. Clark, Louisville, KY, Counsel for Appellant.

Craig L. Johnson, Whonsetler & Johnson, PLLC, Louisville, KY, Counsel for Appellee.

LAMBERT, Chief Justice.

This case arises from medical complications ensuing from breast lift surgery. The Appellant, Sharon Jo Ann Harrison filed a medical negligence claim against Dr. George Valentini who performed the lift surgery and administered follow-up care. The trial court dismissed the action

as time-barred and the Court of Appeals affirmed. We granted discretionary review to consider whether the continuing treatment Appellant received from Appellee tolled the applicable statute of limitations, rendering her claim timely. Our close examination of the doctrine and its rationale convinces us to answer in the affirmative.[1] We therefore reverse and remand the case to the trial court for further proceedings.

Ms. Harrison, who had previously received breast implants, underwent breast lift surgery on October 2, 1997. She began experiencing complications within a couple of weeks. Specifically, she experienced drainage from her breasts and skin deterioration, ultimately resulting in the loss of her left nipple and numbness in her right nipple. Dr. Valentini made several subsequent unsuccessful attempts to replace her nipple and to correct additional disfigurement resulting from the 1997 surgery. Appellant remained in Dr. Valentini's care for nearly three years. During this time she had initial consultations with three other doctors to explore additional treatment options, but each told her to give the healing process more time or suggested that she remain in Dr. Valentini's care. She continued primary treatment with Dr. Valentini until April 11, 2000.

On November 16, 2000, more than three years after the 1997 surgery, but within one year of Harrison's last appointment with Dr. Valentini, suit was filed. After preliminary discovery, Dr. Valentini moved for summary judgment on two grounds: 1) that Ms. Harrison's action should be barred by the applicable statute of limitations and 2) that Ms. Harrison failed to offer adequate expert testimony that Dr. Valentini's treatment deviated from the requisite standard of care. The trial court granted summary judgment in Dr. Valentini's favor, holding that Ms. Harrison's cause of action was barred by the statute of limitations. The Court of Appeals affirmed. Neither court reached the issue of the sufficiency of the expert testimony on the standard of care issue.

On her appeal to this Court, Ms. Harrison contends that the statute of limitations should have been tolled because Dr. Valentini obstructed her from filing suit, and/or that this Court should recognize the continuous course of treatment rule. As there is little evidence of obstruction, we need not address the issue. Rather, the fact of Appellant's continuing treatment by Dr. Valentini will be our decisional basis.

■ Generally, a medical negligence lawsuit must be brought within one year of the date the cause of action accrues or is discovered.[2] This rule, which is codified in KRS 413.140(2), establishes the time that the action accrues if an injury is not immediately discoverable.[3] It establishes the date of accrual as the date that the injury is or, with reasonable care, should have been discovered.[4]

■ Applying the rule in medical malpractice cases can be confusing because

1. See, e.g., Lane v. Lane, 295 Ark. 671, 752 S.W.2d 25 (Ark.1988); Borgia v. City of New York, 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962); Horton v. Carolina Medicorp, Inc., 344 N.C. 133, 472 S.E.2d 778 (1996); Ishler v. Miller, 56 Ohio St.2d 447, 384 N.E.2d 296 (Oh.1978); Hotelling v. Walther, 169 Or. 559, 130 P.2d 944 (1942); Farley v. Goode, 219 Va. 969, 252 S.E.2d 594 (1979); Metzger v. Kalke, 709 P.2d 414 (Wyo. 1985).

2. KRS 413.140(1)(e).

3. Wiseman v. Alliant Hospitals, Inc., 37 S.W.3d 709 (Ky.2000).

4. Hackworth v. Hart, 474 S.W.2d 377 (Ky. 1971).

"injury" is a term of art in the law.[5] Undesirable results of medical treatment do not constitute compensable injury.[6] Rather, such injury is defined as "the invasion of any legally protected interest of another."[7] Thus, "[legal] injury in the medical malpractice context refers to the actual wrongdoing, or the malpractice itself."[8]

Accordingly, under the discovery rule, actual or constructive knowledge of the medical negligence triggers the commencement of the statute of limitations.[9] This is problematic because often the patient cannot know whether the undesirable outcome is simply an unfortunate result of proficient medical care or whether it is the consequence of substandard treatment. Thus, a patient is left to speculate about the cause of the problem.

Moreover, neither the discovery rule nor KRS 413.190 affords the physician and patient an opportunity to significantly cooperate with each other to improve the initial results or mitigate the damages caused by the poor treatment. Rather the patient is required to file suit immediately to avoid the risk of his suit being time-barred.[10] Such a requirement operates to undermine rather than bolster the relationship of trust and confidence that a patient should be able to have with his or her physician.[11]

Ms. Harrison suggests that the continuous course of treatment doctrine can eliminate these concerns. Under this doctrine, the statute of limitations is tolled as long as the patient is under the continuing care of the physician for the injury caused by the negligent act or omission.[12]

This court has previously held that the continuous representation rule in legal malpractice cases coalesces with the legislative intent inherent in the enactment of the discovery rule. In *Alagia, Day, Trautwein & Smith v. Broadbent*,[13] this Court elaborated on the underlying principles for the continuous representation rule:

> [W]e believe it [the continuous representation rule] reflects the intent of the general assembly with its enactment of the discovery rule. Moreover, we perceive a practical advantage in the continuous representation rule. In a proper case, a negligent attorney may be able to correct or mitigate the harm if there is time and opportunity and if the parties choose such a course. Without it, the client has no alternative but to terminate the relationship, perhaps prematurely, and institute litigation.

These sound principles are equally persuasive in the context of medical malpractice.

The rationale for the continuous treatment exception rests on a number of doctrinal assumptions. Thus it is posited that the trust and confidence that marks the physician-patient relationship puts the patient at a disadvantage to question the doctor's techniques, and gives the patient the right to rely upon the doctor's professional skill without the necessity of interrupting a continuing course of treatment by instituting suit. This exception not only provides the patient with the opportunity to seek

5. *Wiseman*, 37 S.W.3d 709.

6. *Id.*

7. *Id.* at 712.

8. *Id.* at 712.

9. *Id.*

10. *Watkins v. Fromm*, 108 A.D.2d 233, 488 N.Y.S.2d 768 (1985).

11. *See Ison*, 249 S.W.2d 791.

12. *Langner v. Simpson*, 533 N.W.2d 511 (Iowa 1995).

13. 882 S.W.2d 121 (Ky.1994).

corrective treatment from the doctor, but also gives the physician a reasonable chance to identify and correct errors made at an earlier stage of treatment.[14]

Though this Court has never squarely addressed the continuous course of treatment doctrine, we have implicitly expressed our approval of the doctrine's rationale through discourse concerning the discovery rule in the medical malpractice arena. Specifically, in *Wiseman v. Alliant Hospitals, Inc.*,[15] we stated:

One who possesses no medical knowledge should not be held responsible for discovering an injury based on the wrongful act of a physician. The nature of the tort and the character of the injury usually require reliance on what the patient is told by the physician or surgeon. The fiduciary relationship between the parties grants a patient the right to rely on the physician's knowledge and skill.

It is entirely logical that the patient's right of reliance extends throughout his treatment with the physician. While treatment continues, the patient's ability to make an informed judgment as to negligent treatment is impaired. Under such circumstances, it can scarcely be said that discovery has occurred. Accordingly, a continuing course of treatment has the effect of preventing discovery of a character necessary to commence the running of the statute of limitations.[16]

■ This rule should be limited, however, by a requirement of patient good faith. Inherent in the doctrine is the expectation that the patient and physician harbor a genuine desire to improve the patient's condition. No benefits will inure to a patient who feigns a desire to continue treatment for the purpose of obtaining more time to "shop around" for another physician to corroborate the malpractice or for a lawyer to file suit. Claims of patient bad faith shall be heard and determined by the trial court and subject to appellate review for abuse of discretion. However, where a patient relies, in good faith, on his physician's advice and treatment or, knowing that the physician has rendered poor treatment, but continues treatment in an effort to allow the physician to correct any consequences of the poor treatment, the continuous course of treatment doctrine operates to toll the statute of limitations until the treatment terminates at which time running of the statute begins.

■ Applying the foregoing rule in the instant case, we hold that Ms. Harrison's suit against Dr. Valentini was timely filed. She filed suit on November 16, 2000, well within one year of her discontinuance of treatment with Dr. Valentini.

As the trial court and Court of Appeals did not address whether an issue of fact was presented by the testimony of Ms. Harrison's expert witness, we will not review that issue here. Rather, the case will be remanded to the trial court for further consistent proceedings.

JOHNSTONE, SCOTT, and WINTERSHEIMER, JJ., concur.

ROACH, J., dissents by separate opinion in which COOPER and GRAVES, JJ., join.

ROACH, Justice, dissenting.

The majority opinion advances persuasive policy arguments for the adoption of

14. *Watkins v. Fromm*, 108 A.D.2d 233, 488 N.Y.S.2d 768, 772 (1985).

15. 37 S.W.3d 709, 712–13 (Ky.2000) (quoting *Black v. Littlejohn*, 312 N.C. 626, 325 S.E.2d 469 (1985)).

16. *Watkins*, 108 A.D.2d 233, 488 N.Y.S.2d 768.

the continuous course of treatment doctrine. If I were serving as a legislator and these arguments were made on the floor of the General Assembly, I would probably support the adoption of the continuous course of treatment doctrine. However, we do not sit as legislators, and, therefore, I must dissent.

Our predecessor court made clear that "[t]he legislature's power to enact statutes of limitation governing the time in which a cause of action must be asserted by suit is, *of course, unquestioned.*" *Saylor v. Hall,* 497 S.W.2d 218, 224 (Ky.1973) (emphasis added); *see also Gilbert v. Barkes,* 987 S.W.2d 772, 776 (Ky.1999) (citing to *Saylor* and stating that "[i]t is well established that the legislature has the power to limit the time in which a common law action can be brought"). In medical malpractice cases, the General Assembly has unequivocally answered this policy question. KRS 413.140(1)(e) states that a negligence action against a physician "shall be commenced within one (1) year after the cause of action accrued." KRS 413.140(2) then states that for actions subject to KRS 413.140(1)(e), "the cause of action shall be deemed to accrue at the time the injury is first discovered or in the exercise of reasonable care should have been discovered."

By requiring that actions be brought within one year of the time the "injury is *first* discovered or in the exercise of reasonable care should have been discovered," the General Assembly has adopted the discovery rule for tolling the medical malpractice statute of limitation. And, quite simply, the phrases "injury is first discovered" and "should have been discovered" means precisely what they say: that the

statute of limitation begins to run when the injury is first discovered or should have been discovered. Discovery occurs when a patient knows that he or she has been wronged and by whom the wrong has been committed. *Wiseman v. Alliant Hospitals, Inc.,* 37 S.W.3d 709, 712 (Ky. 2000).

The evidence clearly established that Ms. Harrison had discovered or at least should have discovered her injury by 1998. Her post-operative difficulties from her 1997 surgery were easily observable. As the Court of Appeals noted, the 1997 surgery resulted in "[d]isfiguring complications ..., including nipple loss." As a result, she sought "second opinions" from a second doctor, then a third doctor, and then a fourth doctor. She was concerned enough that in 1998 she even consulted with an attorney (on whose advice she consulted the third doctor). There is simply no way that Ms. Harrison had no knowledge of her injury. Thus, her suit against Dr. Valentini in November 2000 was clearly time-barred under KRS 413.140.

The majority, however, has, through pure judicial fiat, supplanted the statutorily prescribed discovery rule with the continuous course of treatment rule. The majority opinion admits that "neither the discovery rule nor KRS 413.140 affords the physician and patient an opportunity to significantly cooperate with each other to improve the initial results or mitigate the damages caused by the poor treatment." Ante at 524.[1] This is, in effect, an admission that the continuous course of treatment rule is different than the discov-

---

1. The majority also describes the requirements of the discovery rule as "problematic." Ante at 524. While noting the various deficiencies in the discovery rule may very well be a good policy argument against the discovery rule, the simple fact is that the discovery rule is what the General Assembly has chosen to enact.

ery rule that is clearly set forth in KRS 413.140. This is where the inquiry as to what rule to apply should end. However, the majority has succumbed to the siren's call to make "good" policy and, preferring a rule that facilitates physician-patient cooperation, chooses to ignore both the clear language of the statute and our settled precedent concerning statutes of limitation. The result of this reasoning is the blanket application of a new bright-line rule that has not been enacted by the General Assembly. I am awestruck by the Court's willingness to make such a raw policymaking pronouncement, especially in the face of decades of controlling precedent and, more importantly, statutory enactment.

In an attempt to find any legal authority in Kentucky for its enactment of this new policy, the majority relies upon *Alagia, Day, Trautwein & Smith v. Broadbent*, 882 S.W.2d 121 (Ky.1994). Although the Court discussed the legal malpractice analog of the continuous course of treatment rule, namely the *continuous representation* rule, in *Alagia, Day*, it did so only in dicta. Ultimately, the Court did not adopt the continuous representation rule, noting that the rule "is not controlling here" and that the case "must be decided on the occurrence rule." *Id.* at 125.[2]

The majority also claims support for adoption of the rule in the following language from *Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709 (Ky.2000):

One who possesses no medical knowledge should not be held responsible for discovering an injury based on the wrongful act of a physician. The nature of the tort and the character of the injury usually require reliance on what the patient is told by the physician or surgeon. The fiduciary relationship between the parties grants a patient the right to rely on the physician's knowledge and skill.

*Id.* at 712–13. What this language means, however, is that the continuous course of treatment doctrine (as opposed to "rule") might, at most, be a useful tool for tolling a statute of limitation based on the discovery rule—in an appropriate case. This is why the dicta in *Alagia, Day* noted that "the continuous representation rule is a branch of the discovery rule," rather than a *replacement*. 882 S.W.2d at 125. As a court of law, however, we simply are not at liberty to adopt a wholly new rule to replace the one that the General Assembly has enacted. Furthermore, it is unnecessary in this case to consider the application of the continuous course of treatment doctrine as a tolling method given that Ms. Harrison's injury was so very obvious. Yet, this is exactly what the majority has done.

The General Assembly has determined that a medical negligence claim must be brought within one year after the "injury is first discovered" and since the judiciary has no power to re-write the statute to

2. The "occurrence" rule is unique to the legal malpractice statute of limitation and is not a part of the medical malpractice statute of limitation, which uses only the discovery rule. *Compare* KRS 413.245 (legal malpractice statute of limitation), *with* KRS 413.140(1)(e) & (2) (medical malpractice statute of limitation). The occurrence rule basically establishes a second limitation period, separate and in addition to that stemming from the discovery rule, for legal malpractice cases. *See Alagia, Day*, 882 S.W.2d at 125 "[T]here are actually two periods of limitation, the first being one year from the date of the *occurrence* and the second being one year from the date of *discovery* if it is later in time." (citing *Michels v. Sklavos*, 869 S.W.2d 728 (1994)).

conform to our own notions of right and wrong, I respectfully dissent.

COOPER and GRAVES, JJ., join this dissenting opinion.