RENDERED:  JANUARY 22, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1051-MR

PATRICIA KARSNER                                                                    APPELLANT

v.
APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE KELLY MARK EASTON, JUDGE
ACTION NO. 17-CI-01861

MARCIS A. CRAIG, M.D. AND                                                  APPELLEES
HARDIN MEMORIAL

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, LAMBERT, AND K. THOMPSON, JUDGES.

COMBS, JUDGE:  This is a medical negligence case.  Patricia Karsner appeals the

summary judgment of the Hardin Circuit Court entered in favor of Hardin

Memorial Hospital and Marcis Craig, M.D.   Karsner filed the malpractice action

claiming damages arising out of complications associated with surgery performed

on her left arm.  Because it was persuaded that the action had been filed out of

time, the circuit court granted summary judgment.  After our review, we affirm.

The following material facts are undisputed. On September 23, 2015, Karsner sustained a fracture of her humerus during an altercation with local police. She was taken by ambulance to Hardin Memorial Hospital where her arm was immobilized by a splint. Several days later, Dr. Craig, an orthopedic surgeon employed by Hardin Memorial Hospital, performed an open reduction internal fixation to help repair the fractured bone. He utilized a surgical locking plate and surgical screws. No complications were noted.

At Karsner's first follow-up appointment on October 13, 2015, Dr. Craig noted that the incisions were healing well. He ordered physical therapy. During follow-up visits on November 5, 2015, and December 3, 2015, neither Dr. Craig nor his nurse practitioner noted any complications. Images indicated the humerus was "aligned and well-fixated" and that the "[h]ardware [was] intact."

Karsner failed to show up for appointments scheduled for January 21, 2016, and March 10, 2016. During her next visit, on March 17, 2016, Karsner complained of pain in her forearm. An x-ray now indicated "non-union" of the humerus. Dr. Craig ordered a bone stimulator to help in healing.

Karsner saw Dr. Craig's nurse practitioner for another visit on April 22, 2016. Karsner complained of pain in her upper left arm. A radiology report dated April 29, 2016, indicated that the bone was "partially ununited." Evidence

of hardware loosening and of a broken screw was also observed. Karsner was advised of the hardware failure.

On May 3, 2016, Karsner returned for another follow-up visit with Dr. Craig. She reported that she was continuing to feel pain. Dr. Craig again described the humerus as a "non-union." Dr. Craig referred Karsner to Dr. Craig Roberts, a trauma specialist at the University of Louisville. Dr. Craig's office scheduled an appointment for May 18, 2016, but Karsner did not appear for the appointment with Dr. Roberts.

In a telephone call to Dr. Craig's office on June 15, 2016, Karsner complained that she was continuing to feel significant pain in her arm and that her prescription for narcotic pain medication had been reduced. An office note documented that Karsner was crying and reported that she was contemplating suicide because of the pain.

Karsner saw her primary care physician on July 8, 2016. The physician noted in his progress report that Karsner reported that she was treating with Dr. Roberts because a surgical plate had loosened in her upper arm just months after her surgery.

On July 27, 2016, Karsner went to the hospital emergency room. She complained of pain in her left arm and a rash. Images indicated "displacement of the butterfly fragment of bone which is now no longer fixed with the screws."

Two days later, on July 29, 2016, Karsner saw Dr. Craig for the last time.  Dr. Craig again noted humerus "non-union."  He suggested to Karsner that he set up another appointment for her to see Dr. Roberts in Louisville.  Karsner indicated to Dr. Craig that she might or might not be able to attend.  However, she did see Dr. Roberts, and on September 16, 2016, he performed surgery to remove the failed surgical hardware.

On August 16, 2017, Karsner filed a proposed complaint with a medical review panel.  (The medical review panel procedure was subsequently declared unconstitutional.)  On November 8, 2017, Karsner filed a medical malpractice action against Dr. Craig and the hospital in Hardin Circuit Court.  Karsner alleged that Dr. Craig's treatment had fallen below the standard of care and that the hospital was vicariously liable for his negligence.

Dr. Craig and the hospital answered and denied the allegations.  They also asserted the one-year statute of limitations as a defense.

Karsner was deposed on October 10, 2018.  With respect to Dr. Craig's treatment, Karsner testified that as early as March 10, 2016, she had developed "an underlying concern" regarding her care.  She believed that:

> the surgery hadn't been done properly.  That Dr. Craig
> shouldn't have done it; he should have sent me to a
> trauma surgeon that day.  And that the infection and my –
> my complaints of there being more pain, not less pain,
> and the complaints of infection were going – going
> unnoticed, untreated, and ignored.

Karsner thought Dr. Craig should not have performed the surgery and "just felt an underlying sense that . . . he was in over his head." She was convinced that Dr. Craig was not adequately qualified to perform her surgery and was out of his depth "when he started talking about trauma surgeons, and I started looking into what trauma surgeons do, and . . . what should have been done."

Relying on Karsner's deposition testimony, the hospital filed a motion for summary judgment on February 4, 2019. It argued that Karsner had knowledge of her alleged injury no later than July 2016 and, consequently, that she had failed to assert a timely claim. In a supplemental memorandum, the hospital raised issues concerning its governmental immunity.

On March 19, 2019, Dr. Craig filed a similar motion for summary judgment. Relying on Karsner's deposition testimony, Dr. Craig argued that the action against him had not been timely filed.

In separate responses, Karsner argued that by the time of her deposition, she "had participated in far too many conversations with legal counsel and medical experts and other physicians to accurately testify as to what she knew or *thought* she knew" during the period that she was being treated by Dr. Craig. She also contended that the "continuing course of treatment doctrine" tolled the statute of limitations until after Dr. Roberts performed the corrective surgery. She argued that her treatment with Dr. Roberts constituted a continuing course of **Dr.**

**Craig's treatment** because Dr. Craig had referred her to Dr. Roberts. For these reasons, she argued that summary judgment was not warranted.

The circuit court conducted a hearing on the motions on April 2, 2019. At the end of the hearing, the court instructed the parties to present any caselaw that they could find pertaining to an extension of the continuing course of treatment doctrine as proposed by Karsner.

Several days later, the circuit court rendered summary judgment. The court concluded that Karsner had discovered or should have discovered her injury well before her last visit with Dr. Craig in July of 2016. The court was not persuaded that the continuing course of treatment doctrine could be extended to toll the statute of limitations throughout Karshner's treatment with Dr. Roberts and that Dr. Craig and the hospital were entitled to judgment as a matter of law.

On April 10, 2019, Karsner filed a motion to supplement the record with a memorandum. In her memorandum, she explained that the court need not evaluate the continuous treatment doctrine as it pertained to Dr. Craig's referral to Dr. Roberts after all. Instead, Karsner's argument now focused upon an allegation that Dr. Craig had fraudulently concealed his malpractice. She argued that Dr. Craig failed to inform her "about some wrongdoing that may give rise to a cause of action" and merely referred her to Dr. Roberts. Karsner surmised that "Dr. Craig knew something was not right or he would not have referred [me] to a trauma

-6-

surgeon – yet he said nothing." Karsner contended that the referral was deceptive and that Dr. Craig used it merely to "run out the statute of limitations clock." She described the referral as a distraction and alleged that it was made only to "eat up" time on a "wild goose chase."

On April 12, 2019, the clerk of the Hardin Circuit Court entered the circuit court's summary judgment against Karsner. The circuit court's subsequent order denying Karsner's motion to alter, amend, or vacate the judgment was entered on May 3, 2019.

Five days later, on May 8, 2019, Karsner tendered electronically her notice of appeal. She did not pay the requisite filing fee, however. CR[1] 73.02(1)(b) provides mandatorily that a notice of appeal "shall not be docketed or noted as filed until such payment is made." CR 73.02(1)(b). The failure of a party to file timely a notice of appeal shall result in dismissal. CR 73.02(2).

Karsner paid her filing fee on July 12, 2019. Nevertheless, the clerk's handwritten notation on the face of the notice of appeal indicates that it was filed electronically on "5-8-19." It also appears that she superimposed a "5" onto the "7" or *vice-versa*. The clerk's handwritten note correctly indicates that the filing fee was received on July 12, 2019, and that copies of the notice of appeal were

---

[1] Kentucky Rules of Civil Procedure.

then served upon the attorneys of record and our clerk. A copy was received by this Court on July 15, 2019.

On July 24, 2019, we ordered Karsner to show cause why her appeal should not be dismissed for failure to file a timely notice of appeal. We have reviewed her response to our order as well as the responses of Dr. Craig and the hospital.

In her response to our show cause order, Karsner explained that counsel filed the notice of appeal "with no filing fee being collected or required in Hardin Circuit Court." Counsel stated that he "had no notice that there was a problem." However, as time passed and counsel became concerned about certification of the record, he contacted the circuit court clerk. Counsel indicated that the clerk "admitted that it was her fault and that we should have been contacted by Hardin County Court Clerk regarding the filing fee. . . ." He explained that the clerk advised that she would certify the record once the filing fee was paid. The fee was promptly forwarded to her attention. In the response filed with this Court, counsel made no reference whatsoever to the appellate rules of procedure.

In their responses, Dr. Craig and the hospital observed that counsel misidentified the filing tendered electronically on May 8, 2019, as "Other Document/Pleading" rather than as a "Notice of Appeal (Civil)." A tendered

"Other Document/Pleading" does not require a filing fee. Consequently, the electronic filing system would never have prompted counsel to pay a filing fee.

Dr. Craig and the hospital argued that because the notice tendered on May 8 was unaccompanied by a filing fee until July 12, it was insufficient to invoke our jurisdiction pursuant to the rules of civil procedure. They relied upon the holding of the Kentucky Supreme Court in *Excel Energy, Inc. v Commonwealth Institutional Securities, Inc.*, 37 S.W.3d 713 (Ky. 2000) *as modified on denial of reh'g* (Nov. 22, 2001), as well as our reasoning in *Bruner v. Sullivan University System, Inc.*, 544 S.W.3d 669 (Ky. App. 2018).

In *Excel Energy*, counsel tendered a notice of appeal to the Jefferson Circuit Clerk's office and stamped it "filed" with the file stamp located in the clerk's office. Counsel dropped the notice of appeal into an inbox for processing but failed to tender the filing fee. **The following day**, the clerk's office notified counsel that the notice was inadequate without the filing fee and refused to mark the notice as filed until the filing fee was paid. The filing fee was promptly paid and the tendered notice was marked filed -- but only **after** the filing deadline. The court concluded that Excel's notice of appeal had not been timely filed, that substantial compliance with the rules was not a standard applicable to the facts, and that automatic dismissal of the appeal was required by our rules of civil procedure.

In *Bruner*, counsel attempted to file a notice of appeal with the court's electronic filing system on May 31, 2016 -- the date the notice was due. However, counsel misidentified the tendered notice as "NOTICE — OTHER." Consequently, counsel was not prompted to pay the required filing fee. The filing fee was not paid for another week. On that day, the clerk docketed Bruner's notice of appeal and marked it as filed. We ordered Bruner to show cause why his appeal was not subject to automatic dismissal.

Bruner's counsel explained that his failure timely to pay the filing fee was the result of his law clerk's difficulty navigating the Jefferson Circuit Court's online electronic filing system. We noted that the electronic system in question was implemented under the authority of the Kentucky Supreme Court's Amended Order 2015-02. Section 15 of that order, entitled "Technical Difficulties; System Unavailability," provides in relevant part:

> (1) Jurisdictional deadlines. Some deadlines are jurisdictional and cannot be extended. A technical failure, including a failure of the eFiling system, will not excuse a failure to comply with a jurisdictional deadline. The eFiler must ensure that a document is timely filed to comply with jurisdictional deadlines and, where necessary to comply with such deadlines, the eFiler must file the document conventionally accompanied by a certification of the necessity to do so in order to meet a jurisdictional deadline.

We rejected counsel's excuse.

We then considered counsel's argument that the automated response that Bruner received after he tendered his notice of appeal brought the matter within the purview of the court's earlier holding in *Norwest Bank Minnesota, N.A. v. Hurley*, 103 S.W.3d 21 (Ky. 2003).

In *Hurley*, the appellant tendered a timely notice of appeal along with a check in the amount of the filing fee. However, when the circuit court clerk received the notice of appeal, she noticed that the check was unsigned. The clerk contacted Norwest's counsel, alerted him that the check was unsigned, and indicated that it was being returned to him for proper signature. Despite the error, the clerk assured Norwest's counsel that the notice of appeal would be filed. The clerk did in fact note on the docket that the notice was filed on the day it was received -- April 20. The circuit court clerk received the signed check on May 9 and noted on the docket that the filing fee was paid that day.

On appeal, we concluded that the clerk violated the provisions of CR 73.02(1) by filing Norwest's notice of appeal because payment was not made timely; *i.e.*, the docket sheet reflected that payment was made on May 9, which was beyond the thirty-day limit allowed in our rules of civil procedure. Relying on the decision of the Kentucky Supreme Court in *Excel Energy*, 37 S.W.3d 713, we concluded that the notice of appeal was untimely and dismissed the appeal.

On appeal, our decision was reversed. The Kentucky Supreme Court determined that **because the clerk had docketed the notice of appeal the day it was filed,** the notice of appeal had been timely and validly filed -- despite the clerk's failure to collect the filing fee in violation of the provisions of CR 73.02(1)(b).

In *Bruner*, we determined that the facts described in *Hurley* were readily distinguishable. In *Bruner*, the certified record indicated that the clerk accepted Bruner's notice of appeal on June 8, 2016 -- the date on which Bruner paid his filing fee. Therefore, we concluded that Bruner's notice of appeal was untimely and dismissed the appeal.

In the case now before us, after considering the parties' responses, a three-judge motion panel observed that the Hardin Circuit Court Clerk did not serve the notice of appeal as properly filed until Karsner's filing fee was received. Nevertheless, by order entered October 22, 2019, the divided panel passed the matter to this merits panel for further consideration, and the parties filed their briefs.

In her brief on appeal, Karsner argues that the circuit court erred by failing to conclude that the statute of limitations was tolled. She cites as the basis for tolling: (1) Dr. Craig's alleged fraudulent concealment of his malpractice; (2) her inability to discover the malpractice until she was examined by an expert

retained for litigation; or (3) an extension of the continuing course of treatment doctrine. Karsner did not address the timeliness of her notice of appeal in her brief.

Because of her omission of the timeliness issue, the hospital argues that she has forfeited any argument that the appeal was timely filed and encourages the Court to dismiss the appeal on this basis. Dr. Craig and the hospital contend that the notice of appeal was not effective until Karsner tendered the filing fee on July 12, 2019. Since it was untimely as of that date, they argue that dismissal is required by our rules of civil procedure. In the alternative, the hospital contends that the Court should exercise its discretion to dismiss the appeal pursuant to the provisions of CR 73.02(2).

CR 73.02(2) provides that a party's failure to comply with procedural rules relating to appeals (even where the failure does not affect the validity of the appeal) is a ground for such action as the appellate court deems appropriate. Pursuant to the rule, we may (among other things) dismiss the appeal, strike the offending brief, or impose fines upon counsel.

In *Clark v. Workman*, 604 S.W.3d 616 (Ky. App. 2020), we observed that appellant's counsel had failed to make a sincere attempt to comply with our rules governing submission of briefs. While we declined to dismiss the appeal,

strike the brief, or fine counsel, we decided to review the matter only for manifest injustice.

Karsner's brief, too, fails to comply with our rules of civil procedure. The statement of the case does not contain **any** "supportive references to the record[,]" nor does the brief contain "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." CR 76.12(4)(c)(iv), (v). Despite the specific requirements of our rules, Karsner failed to satisfy perhaps the two most substantial requirements for briefs set forth in CR 76.12(4)(c). The latter error is magnified by the specific assertion of both Dr. Craig and the hospital that the fraudulent concealment argument presented in Karsner's brief is wholly unpreserved for our review.

Before reaching the merits of the appeal, we must first decide whether our jurisdiction has been properly invoked and, even if so, whether the deficiencies of Karsner's brief would nonetheless preclude our review. As we observed in *Bruner*, 544 S.W.3d at 672:

> if a notice of appeal is tendered to a clerk within the time permitted by the Civil Rules, but is unaccompanied by the requisite filing fee, there could be two very different results:
>
> (1) As in *Hurley*, the clerk might violate his or her oath of office by accepting the notice of appeal anyway, in

which case the ensuing appeal will *not* be subject to automatic dismissal as untimely; or

(2) as in *Excel*, the clerk might refuse to file the notice of appeal until the filing fee is received, in which case—assuming the filing fee is paid on a date outside the appellate window—the ensuing appeal *will* be subject to automatic dismissal as untimely.

In this case, we believe the situation is closer to that described by the court in *Hurley*. Despite counsel's failure to pay the required filing fee, the Hardin Circuit Court Clerk hand-wrote across the face of the notice of appeal that it was filed on May 8, 2019, the date upon which it was electronically tendered. Additionally, along with a notation that the filing fee was not received until July 12, 2019, the clerk again misrepresented the truth and noted on the docket that the notice of appeal was filed on May 8, 2019. Because of the clerk's actions, there is no basis pursuant to *Hurley* upon which to conclude that the appeal is subject to automatic dismissal.

Next, we must decide whether Karsner's failure to comply with the provisions of CR 73.02(2) merits dismissal of the appeal. We conclude that it does not. However, as in *Clark*, *supra*, we are persuaded that Karsner has failed to make a sincere attempt to comply with our rules of appellate procedure. As a result, we elect to consider the appeal on its merits -- but to review only for manifest injustice.

Karsner contends that the circuit court erred by concluding that her claims were time-barred on the basis that she failed to show the existence of any circumstance that would make the action timely under either the discovery rule or the continuous course of treatment doctrine. However, our review of the circuit court's decision does not indicate that Karsner suffered a manifest injustice as a result of the dismissal.

In its judgment, the circuit court carefully recounted its thorough analysis of the defenses asserted by Dr. Craig and the hospital. It noted that ordinarily a medical negligence action must be brought within one year of the date that the injury is, or with reasonable care, should have been discovered. KRS[2] 413.140. "[T]he statute begins to run on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered." *Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709, 712 (Ky. 2000) (quoting *Hackworth v. Hart*, 474 S.W.2d 377 (Ky. 1971)).

The circuit court concluded that the chronology of events was undisputed in this case. Reviewing Karsner's deposition testimony, it observed that she tied her rising concerns about the adequacy of her care to Dr. Craig's decision to refer her to a Louisville trauma surgeon, Dr. Roberts, during her May 3, 2016, visit. "Particularly problematic for Karsner is her statement about her

---

[2] Kentucky Revised Statutes.

understanding the bone wasn't healing and her knowledge of the broken screw." Karsner was aware of these things no later than May 3, 2016. Karsner certainly either knew or had reason to know what was causing her pain and who had caused it no later than her last visit with Dr. Craig in July 2016.

Finally, the circuit court noted that where the date of the discovery of an injury does not pose a genuine factual dispute, summary judgment is appropriate. It concluded that no genuine issue of fact remained -- that Karsner discovered or should have discovered her injury well before her last visit with Dr. Craig in July 2016 -- and that Dr. Craig and the hospital were entitled to judgment as a matter of law.

The court also reviewed the potential applicability of the continuing course of treatment doctrine. The circuit court observed that in *Harrison v. Valentini*, 184 S.W.3d 521 (Ky. 2005), *as modified on denial of reh'g* (Mar. 23, 2006), the Kentucky Supreme Court (in a divided opinion) adopted the continuing course of treatment doctrine to toll the statute of limitations in medical malpractice actions. Where it applies, the continuous course of treatment doctrine provides that "the statute of limitations is tolled as long as the patient is under the continuing care of the physician for the injury caused by the negligent act or omission." *Id.* at 524 (footnote omitted). The *Harrison* Court noted as follows:

> the trust and confidence that marks the physician-patient relationship puts the patient at a disadvantage to question

> the doctor's techniques, and gives the patient the right to
> rely upon the doctor's professional skill without the
> necessity of interrupting a continuing course of treatment
> by instituting suit.

*Id.* (citation omitted). By tolling the statute of limitations for medical malpractice actions, the continuous course of treatment doctrine "gives the physician a reasonable chance to identify and correct errors made at an earlier stage of treatment." *Id.* at 525 (citation omitted).

In the case before us, the circuit court declined to apply the doctrine. It reasoned that the purpose of the doctrine -- "to support the relationship between doctor and patient to address complications, which, if properly treated, may avoid a bad result" -- was not implicated because Karsner had filed her action **more than a year after she last saw Dr. Craig**. Furthermore, it observed that no appellate court in Kentucky had considered an expansion of the doctrine to encompass not only the original doctor's treatment of the patient, but also his subsequent referral of the patient to another doctor.

After the circuit court granted summary judgment, the Kentucky Supreme Court published its Opinion in *Sneed v. University of Louisville Hospital*, 600 S.W.3d 221 (Ky. 2020). The *Sneed* Court rejected the patient's contention that the continuous course of treatment doctrine could be expanded to include subsequent treatment by another physician who worked **at the same hospital** where she received her initial care. It was not convinced that an extension of the

doctrine would serve to "bolster the relationship of trust and confidence" that a patient has with a particular treating physician. "The type of relationship between a patient and the Hospital, or all physicians at the Hospital, is different in kind and degree than the relationship between a patient and a single treating physician." *Sneed*, 600 S.W.3d at 227. "A patient's 'ability to make an informed judgment as to the negligent treatment' is not so impaired by her relationship with the Hospital itself to prevent her from discovering her injury." *Id.* (citation omitted). Therefore, the Supreme Court rejected an extension of the doctrine.

The evidence in this case indicates that Dr. Roberts and Dr. Craig were involved in entirely separate practices in different cities. Furthermore, no evidence was presented to show that Dr. Roberts collaborated with Dr. Craig or that he even discussed Karsner's care with Dr. Craig. There is no evidence to indicate that Dr. Roberts did anything more than rely upon Karsner's medical records for information concerning Dr. Craig's surgery and subsequent care. Finally, it bears noting that Karsner's bold suggestion that she was "a victim of an ongoing cover-up" is absolutely unsupported by anything appearing of record. Under the circumstances, we are not persuaded that manifest injustice resulted from the trial court's decision not to extend the continuous course of treatment doctrine beyond Dr. Craig, Karsner's original physician.

Finally, we address Karsner's contention that the circuit court erred by failing to conclude that Dr. Craig's decision to refer her to Dr. Roberts constituted fraudulent concealment of her injury (and of his malpractice) sufficient to extend the statute of limitations under principles of equitable estoppel. Dr. Craig and the hospital argue that the issue is unpreserved for review. Karsner contends that the issue is preserved because the circuit court merely failed to appreciate the nuances of her original argument concerning the accrual of her cause of action.

The rule is firmly established that the trial court should first be given the opportunity to rule on questions before they are available for appellate review. *See Curty v. Norton Healthcare, Inc.*, 561 S.W.3d 374 (citing *Elwell v. Stone*, 799 S.W.2d 46, 48 (Ky. App. 1990)). This Court will entertain an argument not presented to the trial court only to avert a manifest injustice. *Id.* This argument was not previously presented to the circuit court prior to its decision to render summary judgment. And it does not appear that our review is necessary to avert a manifest injustice. Therefore, we decline to address it except to note again that the allegation is unsupported by anything appearing of record.

We AFFIRM the judgment of the Hardin Circuit Court.


ALL CONCUR.

-20-

BRIEF FOR APPELLANT:

Jeffrey A. Sexton
Louisville, Kentucky

BRIEF FOR APPELLEE HARDIN
MEMORIAL HOSPITAL:

Jennifer B. Oldham
Elizabethtown, Kentucky

Thomas N. Kerrick
Shawn Rosso Alcott
Bowling Green, Kentucky

BRIEF FOR APPELLEE MARCIS A.
CRAIG, M.D.:

Craig L. Johnson
Timothy B. George, Jr.
Louisville, Kentucky