RENDERED: SEPTEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0390-MR

THE PARKWAY EXTENDED CARE
CENTER, INC. D/B/A PARKWAY
MEDICAL CENTER A/K/A
PARKWAY REHABILITATION AND
NURSING CENTER; ALTON CREEK,
LLC; JOE OHKRULICA IN HIS
CAPACITY AS ADMINISTRATOR
OF THE PARKWAY EXTENDED
CARE CENTER INC. D/B/A
PARKWAY MEDICAL CENTER
A/K/A PARKWAY
REHABILITATION AND NURSING
CENTER; AND PARKWAY
ACQUISITION, LLC                                                          APPELLANTS


v.                          APPEAL FROM JEFFERSON CIRCUIT COURT
                            HONORABLE ERIC JOSEPH HANER, JUDGE
                                   ACTION NO. 15-CI-004690


LEO J. ELIAS, AS EXECUTOR OF
THE ESTATE OF LINDA S. ELIAS,
DECEASED AND LEO J. ELIAS, ON
BEHALF OF THE WRONGFUL
DEATH BENEFICIARIES OF LINDA
S. ELIAS, DECEASED                                                        APPELLEES

<u>OPINION</u>
<u>REVERSING AND REMANDING</u>

\*\* \*\* \*\* \*\* \*\*

BEFORE: CALDWELL, COMBS, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: The Appellants challenge, *inter alia*, the trial court's applying the continuous treatment doctrine to find a nursing home negligence claim based on a pressure injury not time-barred. As the pressure injury claim was time-barred under the facts here, we reverse and remand for a new trial in conformity with this Opinion.

## FACTS

Linda Elias was admitted into the Parkway Extended Care Center ("Parkway") – a skilled nursing facility – in November 2010. Ms. Elias was ninety years old and had many serious health problems including heart problems and dementia. She had recently been hospitalized for a broken hip, but she had not undergone surgery for the broken hip due to her age and health issues. She was unable to walk and her right leg was contracted and tight when she was admitted to Parkway.

In March 2011, a pressure ulcer on Ms. Elias's right heel was noted. Parkway claims its skin management team monitored the ulcer for the next several weeks and that it took other steps such as placing special booties on her feet and turning her once or twice an hour according to doctor's orders. But there was a

lack of documentation of such steps in Parkway's records about Ms. Elias between the March 2011 notation of the heel pressure injury and May 2011. By May 2011, the heel pressure ulcer had worsened and was described as a deep tissue injury.

From May 2011 to February 2012, Ms. Elias received treatment from a wound care specialty medical practice for the heel pressure ulcer including debridement. In February 2012, the specialty practice ceased treating or monitoring Ms. Elias because the heel pressure wound had essentially healed – having been reduced to the size of a pinprick. There is no evidence of any other pressure injuries occurring before Ms. Elias passed away in early 2015.

In late 2015, the executor of Ms. Elias's estate filed suit against Appellants Parkway, its administrator, and related corporate entities. (Henceforth, we refer to Appellees as "Elias" and the Appellants collectively as "Parkway".) The suit did not name as defendants any of Ms. Elias's treating doctors, who were not Parkway employees. The case proceeded to trial on negligence claims against Parkway, its corporate entities, and administrator.

Prior to trial, Parkway filed a motion for partial summary judgment on all claims relating to injuries suffered more than a year prior to Ms. Elias's death. Parkway asserted such claims were barred by the one-year statute of limitations in KRS[1] 413.140.

---

[1] Kentucky Revised Statutes.

Elias argued the continuous treatment doctrine applied so the statute of limitations was tolled during the time Ms. Elias received treatment from Parkway – *i.e.*, until her death in early 2015.  Parkway responded by asserting the continuous treatment doctrine applied only to medical malpractice claims against doctors and not to negligence claims against nursing homes.

The trial court agreed with Elias that the continuous treatment doctrine could apply to skilled nursing facilities.  It reasoned the aim of the continuous treatment doctrine – to further the relationship of trust between patients and physicians – should also apply to a skilled nursing facility providing treatment.  So, it denied the motion for partial summary judgment.

The case proceeded to trial.  At trial, Ms. Elias's daughter and attorney-in-fact testified to being aware of the heel pressure ulcer in 2011 and suspecting substandard care by Parkway to be the cause.

The medical evidence included the testimony of a treating wound care specialist physician, who stated Ms. Elias received treatment for the heel pressure ulcer from his clinic from May 2011 through February 2012 – with clinic treatment ceasing upon the wound resolving to a mere pinprick size.  The wound care specialist further stated that the course of healing indicated Parkway's staff was following the practice's orders.  Elias's experts criticized Parkway but admitted the

heel pressure ulcer had ultimately been fully resolved – without explicitly disputing that this occurred by the early months of 2012.

Parkway moved the trial court to enter a directed verdict on statute of limitations grounds, which the trial court denied. The trial court and the parties again discussed whether the continuous treatment doctrine applied. But the trial court did not change its prior ruling that the continuous treatment doctrine applied.

The jury rendered a verdict in favor of Elias. Parkway argues it is entitled to a new trial since, in its view, the trial court erroneously applied the continuous treatment doctrine.

## ANALYSIS

Most of Parkway's arguments on appeal challenge the trial court's application of legal authority including statutes of limitation and court precedent. We review the trial court's interpretation and application of such legal authority *de novo*. *See, e.g.*, *Adamson v. Adamson*, 635 S.W.3d 72, 77 (Ky. 2021); *Commonwealth v. Reed*, 647 S.W.3d 237, 243 (Ky. 2022).

The trial court's denial of a motion for new trial is entitled to some deference on appeal, however, and cannot be reversed except for clear error or an abuse of discretion. *See, e.g.*, *Jefferson v. Eggemeyer*, 516 S.W.3d 325, 337 (Ky. 2017); *Banker v. University of Louisville Athletic Association, Inc.*, 466 S.W.3d 456, 460 (Ky. 2015).

**Trial Court Erred in Applying the Continuous Treatment Doctrine to Toll the Statute of Limitations to Claims Based on Heel Wound Under These Facts**

The continuous treatment doctrine was first recognized by our Supreme Court in *Harrison v. Valentini*, 184 S.W.3d 521, 524 (Ky. 2005).[2] Our Supreme Court stated: "Under this doctrine, the statute of limitations is tolled as long as the patient is **under the continuing care of the physician for the injury caused by the negligent act or omission**." *Id*. (Emphasis added.)

Assuming *arguendo* that this doctrine could apply to injuries allegedly caused by the negligence of a skilled nursing facility, under the facts of this case, it still does not apply. The statute of limitations is no longer tolled once the treatment for the injury caused by the negligence has come to an end.

The trial court reasoned that Ms. Elias continued to receive treatment from Parkway to prevent further pressure injuries until she died. However, the treatment for the heel pressure sore – discovered in early 2011 and allegedly caused by poor treatment at Parkway – terminated in the early months of 2012. And there appears to be no dispute that particular pressure sore – the injury allegedly caused by poor treatment – had fully healed by about March 2012.

---

[2] Our Supreme Court originally used the term "continuous course of treatment doctrine." *Valentini*, 184 S.W.3d at 524. However, more recent Kentucky precedent refers to the same concept as the "continuous treatment doctrine." *See, e.g.*, *Sneed v. University of Louisville Hospital*, 600 S.W.3d 221, 226 (Ky. 2020).

So, even assuming the continuous treatment doctrine could apply to claims against a skilled nursing facility like Parkway, the statute of limitations would have started running again in early 2012. This means that a personal injury claim based on the heel pressure ulcer would have to be filed by early 2013 to be timely, since a one-year statute of limitations applies to personal injury claims. KRS 413.140(1)(a). But suit was not filed until late 2015.

Despite the trial court's view that the continuous treatment doctrine should apply while Ms. Elias continued to receive treatment from Parkway to prevent further pressure injuries, precedent about the continuous treatment doctrine does not call for tolling the statute of limitations while one receives care to prevent further similar injuries. Instead, tolling is limited to the period in which the patient receives treatment for the injury caused by the alleged negligence. *See Valentini*, 181 S.W.3d at 524. *See also Litsey v. Allen*, 371 S.W.3d 786, 789 (Ky. App. 2012) (statute of limitations not tolled during the time period in which patient continued to have her physician renew her prescriptions but did not seek treatment to correct the injury caused by poor treatment).

We need not reach the question of whether the continuous treatment doctrine could ever apply to negligence claims against nursing homes. But as there is no way to ascertain the extent to which the jury's verdict and award was based

on the heel pressure wound versus other alleged injuries,[3] we must reverse and remand for a new trial in which recovery for the heel pressure ulcer is not allowed.

As the evidence on retrial may differ, we decline to reach other issues argued on appeal – including alleged error in the punitive damages award and whether Parkway's administrator was entitled to a directed verdict – since the parties may relitigate these issues.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the Jefferson Circuit Court's judgment and **REMAND** for a new trial excluding evidence of the heel pressure wound.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

John L. Tate
Bethany A. Breetz
Neil E. Barton
Louisville, Kentucky

BRIEF FOR APPELLEES:

Stephen M. Garcia
Louisville, Kentucky

---

[3] The complaint alleged and evidence was offered of injuries other than the heel pressure wound, including severe contractures, improper pain management, and improper feeding tube management. The jury instructions did not require the jury to delineate separate awards for separate physical injuries.

Elias offered medical expert testimony indicating that Ms. Elias's being unable to undergo physical therapy for a time due to the heel pressure ulcer may have contributed to contractures. Thus, though recovery for the long-healed pressure injury itself is time-barred, we do not reach whether all mention of the heel pressure sore must be excluded on retrial.